IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

EARLE E.AUSHERMAN, et al.          *

        Plaintiffs          *

        vs.          *     CIVIL ACTION NO. MJG-01-438

BANK OF AMERICA CORPORATION,     *
et al.
                  *

        Defendants

*          *          *          *          *          *          *          *          *

<u>MEMORANDUM AND ORDER</u>

The Court has before it Plaintiffs' Motion for Partial Summery Judgment [Paper No. 91], Defendants' Cross Motion for Summary Judgment [Paper No. 177], Defendants' Motion to Exclude Testimony of Evan D. Hendricks [Paper No. 181], and the materials submitted by the parties in relation thereto. The Court finds a hearing unnecessary.

I.   <u>BACKGROUND</u>[1]

The instant case is a suit brought by a number of unrelated Plaintiffs pursuant to the Fair Credit Reporting Act, 15 U.S.C §1681 <u>et</u> <u>seq</u>. ("FCRA").

_____

[1]   Because both sides seek summary judgment, the facts are here presented in as neutral a fashion as possible. Any material disagreement between the parties as to the facts will be detailed, as necessary, in the Discussion section of this Memorandum.

Plaintiffs, a number of unrelated individuals, allege that Defendants Bank of America Corporation ("BAC") and Banc of America Auto Finance ("BAAF"), together with an unnamed and unidentified agent or employee of Defendants, called "John Doe 1" ("JD1"), obtained consumer credit reports on them between November 10, 1999 and July 17, 2000 without a permissible purpose, in violation of the FCRA.  Further, Plaintiffs allege that the credit reports were sold or transferred to a second co-conspirator, "John Doe 2"  ("JD2"), also unnamed and unidentified.

Plaintiffs premise their claims on the fact that their credit reports indicated that a credit inquiry was placed with Trans Union, a credit information provider, from an entity identified as "Banc Amer Auto" with a subscriber identification code of FNY0000292 ("the Code").  The Code had been issued to BAAF's predecessor in interest, Oxford Resources Corporation, which was merged into BAAF in 1998. According to BAAF, in or around September 1999, BAAF ceased utilizing a number of subscriber codes including the Code at issue in this case, after moving to a new computerized system for accessing consumer credit reports.

BAAF was invoiced for the credit reports generated by Trans Union, and because the invoices referenced individuals

2

who were not customers or prospective customers of BAAF, commenced an investigation of the use of the Code. Upon finding that the credit inquiries at issue were not authorized, and discovering evidence indicating that the inquiries may have been generated from outside of BAAF's computer systems, BAAF notified Trans Union that the inquiries were unauthorized and requested that they be deleted from Plaintiffs' credit reports.

Plaintiffs brought the instant suit seeking compensatory damages for "dissemination of personal financial information, invasion of privacy, and impairment of their ability to obtain credit," in addition to costs, and legal fees.

The following claims and causes of actions remain in the case following the Court's December 3, 2001 Memorandum and Order on dismissal motions:

COUNT I           Willful Violation of the FCRA Under False
                  Pretenses - 15 U.S.C. §1681n and §1681q

COUNT II          Willful Violation of the FCRA - 15 U.S.C.
                  §1681e and §1681n

COUNT III         Negligent Violation of the FCRA - 15 U.S.C.
                  §1681e and §1681o

COUNT IV          Willful Refusal to Disclose Information - 15
                  U.S.C. §1681d(b) and §1681g(a)(3)(A)

COUNT V           Negligent Refusal to Disclose Information - 15
                  U.S.C. §1681d(b) and §1681g(a)(3)(A)

```
COUNT VI        Willful Violation of MD Com. Law §14-1201, et
                seq. (John Doe 1)

COUNT VII       Willful Violation of MD Com. Law §14-1201, et
                seq. (BAC and BAAC)

COUNT VIII      Willful Violation of MD Com. Law § 14-1201, et
                seq. (BAC - 8 of the 25 Plaintiffs)

COUNT XI        Violation of Computer Fraud and Abuse Act
                ("CFAA"), 18 U.S.C. § 1030, et seq.
```

By their instant Motion, Plaintiffs seek summary judgment as to liability only on Count One of the Amended Complaint. Defendants' Cross-Motion seeks summary judgment on all counts of the Amended Complaint.

II.  **LEGAL STANDARD**

In deciding a summary judgment motion, the Court must look beyond the pleadings and determine whether there is a genuine need for trial.  See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  The Court must determine whether the evidence presents a sufficient disagreement to require submission to a jury or whether the evidence is so one-sided that one party must prevail as a matter of law.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-53 (1986).  If the defendant carries its burden by showing an absence of evidence to support a claim, the plaintiff must demonstrate that there is a genuine issue of

4

material fact for trial.  See Celotex Corp. v. Catrett, 477

U.S. 317, 324-25 (1986).  The Court must look at the evidence

presented in regard to the motion for summary judgment through

the non-movant's rose-colored glasses but must view it

realistically.  Nevertheless, the non-movant is entitled to have

all reasonable inferences drawn in his favor.  Adickes v. S.H. Kress

& Co., 398 U.S. 144, 158-59 (1970).

An issue of fact must be both genuine and material in

order to forestall summary judgment.  An issue of fact is

genuine if the evidence is such that a reasonable jury could

return a verdict in favor of the plaintiff.  See Anderson, 477

U.S. at 248.  An issue of fact is material only if the

establishment of that fact might affect the outcome of the

lawsuit under governing substantive law.  See id.  "If the

evidence is merely colorable, or is not significantly

probative, summary judgment may be granted."  Id. at 249-50

(internal citations omitted).


III.    DISCUSSION

    A.    Motion to Exclude Testimony of Evan Hendricks

        Defendants have moved to exclude the testimony and strike

the expert report of Plaintiff's sole expert witness, Evan D.

Hendricks ("Hendricks").  For the purposes of summary

judgment, the Court shall consider all evidence submitted, including the proffered testimony of Hendricks, to the extent that it is relevant to any issues presented.

As related to the admissibility of Hendricks' testimony and report at trial, the motion is mooted by this Courts' decision herein to grant summary judgment to the Defendants.


B.    Motions for Summary Judgment

1.    Bank of America as Defendant

Defendants claim that BAC is not a proper defendant in this action, as the only argument for its involvement is that it is responsible for the actions of its subsidiary, BAAF. Indeed, Bank of America Corporation's name appears nowhere on the disputed credit reports, and there is no evidence whatsoever that it was directly involved in any of the acts for which Plaintiffs seek to impose liability.

Plaintiffs seek to hold BAC liable as the parent company of BAAF, whose name appears on Plaintiff's credit reports as the entity that requested the reports.

It is well-established the mere fact of a parent-subsidiary relationship between two corporate entities does not make a parent "liable for the acts of its subsidiaries." See United States v. Bestfoods, 524 U.S. 51, 61 (1998).  The

only way that a parent may be held liable for the acts of its subsidiaries is if the corporate veil can be pierced, and piercing is only appropriate when one corporation is shown to be the "alter ego" of the other.  See <u>Ost-West-Handel Bruno Bischoff GMBH v. Project Asia Line</u>, 160 F.3d 170, 173 (4th Cir. 1998); <u>DeWitt Truck Brokers, Inc. v. W. Ray Fleming Fruit Co.</u>, 540 F.2d 681, 683 (4th Cir. 1976).

The party claiming that piercing is appropriate bears the burden of supporting that claim with evidence.  <u>Id.</u>  The alter-ego determination is governed by eight factors: "gross undercapitalization, insolvency, siphoning of funds, failure to observe corporate formalities and maintain proper corporate records, non-functioning of officers, control by a dominant stockholder, and injustice or fundamental unfairness."  <u>Ost-West-Handel</u>, 160 F.3d at 174.  The Fourth Circuit has stated that no factor by itself will indicate an alter-ego situation; rather, such a determination "must involve a number of such factors... [including] an element of injustice or fundamental unfairness."  <u>DeWitt Truck Brokers</u>, 540 F.2d at 687.

Defendants have presented evidence that BAAF is a wholly separate corporate entity from BAC, that it is adequately capitalized, that it conducts its own Board meetings and

maintains its own separate corporate records.  <u>See</u> Affidavit of Craig Rosato at ¶¶3-5, at Ex. 6 to Def.'s Mem. in Support. Plaintiffs have not countered this evidence with any evidence of their own – nor any argument – to support its bare assertion that BAC should be liable for the acts of BAAF.

In light of the fact that there is no evidence even suggesting actions taken directly by BAC that would serve to confer liability, and that Plaintiffs have not shown any reason to pierce the corporate veil and hold BAC liable for the alleged acts of BAAF, Defendant BAC is entitled to summary judgment on all claims against it.

<blockquote>2.    <u>Liability of Banc America Auto Finance for<br>Actions of JD1 and JD2</u></blockquote>

Defendants claim that BAAF cannot be liable for the actions of the unidentified co-conspirators JD1 and JD2, as there is no evidence indicating that either JD1 or JD2 are agents or employees of BAAF.  It is well-established that a corporation may be liable for the actions of its employees. In ths instant case, however, because the identities of JD1 and JD2 have not, after lengthy discovery, been determined, there is no evidence that JD1 and/or JD2 are employees of

BAAF.  In the absence of such evidence, no reasonable jury could find BAAF liable for the actions of JD1 and JD2.

However, to the extent that Plaintiffs seek to hold BAAF liable for its _own_ actions under the FCRA (for example, for negligently allowing access to its computer system such that an unknown person could pull credit records), such claims would not be barred merely because BAAF cannot be liable for the actions of JD1 and JD2 on a respondeat superior basis.

 3.   Claims in Counts II, III, IV, and V Relating to Banc America Auto Finance as "Consumer Reporting Agency"

Plaintiffs have stated claims against Defendants pursuant to FCRA Sections 1681(e) (Counts II and III) and (g) (Counts IV and V), and pursuant to the Maryland Commercial Code Section 14-1201.  Defendants contend that because the applicable statute applies only to "consumer reporting agencies," they cannot be liable under the statute.[2]

---

[2]   Counts II and III also state that they are brought pursuant to 1681(n) and 1681(o), respectively.  Sections 1681(n) and (o) do not contain substantive causes of action but only provide a remedy for intentional (part n) and negligent (part o) violations of other Sections.  Similarly, Counts IV and V state claims for relief based on 1681(b).  That provision also merely creates a remedy for substantive violations of other provisions.  Thus, if no violation of the substantive provision in each Count is found, the Count may be dismissed.

Because the Court has determined that there is no
evidentiary basis for any claims against BAC in the instant
lawsuit, the pertinent inquiry is whether BAAF qualifies as a
"consumer reporting agency."

The FCRA specifically defines "consumer reporting agency"
as:

> [A]ny person which, for monetary fees, dues, or on a
> cooperative nonprofit basis, regularly engages in
> whole or in part in the practice of assembling or
> evaluating consumer credit information or other
> information on consumers for the purpose of
> furnishing consumer reports to third parties, and
> which uses any means of interstate commerce for the
> purpose of preparing or furnishing consumer reports.

15 U.S.C. §1681(a)(f).

BAAF is a corporation that processes auto lease and auto
loan applications for customers.  In order to do so, it
obtains credit reports on existing customers and on applicants
that request that BAAF finance their lease or purchase.

BAAF's Senior Vice President, Craig Rosato, testified in
an affidavit that BAAF "is not in the business of selling or
distributing consumer reports to third parties nor does BAAF
regularly engage in the assembling and evaluating of
information on consumers."  Further, Rosato stated that "BAAF
obtains credit information solely for the purpose of making
credit decisions in the normal course of its business."  See

10

Rosato Aff. at Ex. 6 ¶4 to Def's Opp/ Mem. in Support.  Thus, BAAF is not in the business of "regularly"  providing consumer reports to third parties for compensation, as required by the plain language of the statute.

Plaintiffs have presented no evidence to refute Rosato's affidavit testimony.  Because Sections 1681(e) and (g) apply only to consumer reporting agencies as defined in the statute, BAAF is entitled to summary judgment on Counts II and III of the Amended Complaint and on the claims for violations of 1681g(a)(3)(A) contained in Counts IV and V of the Amended Complaint.

### 4.  Claims in Counts IV and V Relating to "Consumer Investigative Reports"

Counts IV and V contain allegations that Defendants violated FCRA §1681d(b), which provides that "anyone who procures or causes to be prepared an investigative consumer report on any consumer" must disclose "the nature and scope of the investigation requested."

In their answers to interrogatories posed by Defendants, Plaintiffs state definitively that they are no longer claiming that BAAF obtained a consumer investigative report on them in this case.  See Pl's Resp. to Def's Request for Admissions at

¶¶6-7, at Ex. 3 to Def's Mem. in Response.  In light of this admission, Defendants are entitled to summary judgment on the remaining claims in Counts IV and V, brought pursuant to FCRA §1681d(b).

        4.   <u>Counts I, VI, and VII: Willful Violation of FCRA and Maryland Commercial Law Under False Pretenses</u>

Plaintiffs have stated claims pursuant to FCRA §§1681(n) and (q) (Count I) and under Maryland Commercial Law §14-1213(a) (Counts VI and VII)[3] for "willful" and "knowing" violations of the FCRA and Maryland Commercial Law.

Section 1681(n) of the FCRA provides that "any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer" for actual or statutory damages, punitive damages, costs, and reasonable attorney's fees.  15 U.S.C. §1681(n)(a) (1998).  Section 1681(q) provides for a fine and/or imprisonment for "any person who knowingly and willfully

_____

[3]    Count VI states claims against Defendant JD1 for willful violations of §§14-1215 - 1216 of the Maryland Commercial Law pursuant to Md. Code Ann. (Comm.) 14-1213(a); while Count VII states claims against Defendant BAAF for willful violations of §§14-1202 - 1203 and 1205, pursuant to 14-1213(a).  Section 1213(a) creates a cause of action of "willful and knowing" violations of any substantive provisions of the statute.

obtains information on a consumer from a consumer reporting
agency under false pretenses."  15 U.S.C. §1682q.

Defendants argue that they cannot be liable under these
provisions of the FCRA because Plaintiffs have not shown any
evidence of "knowing" or "willful" behavior by BAAF.  The
Court agrees.

Absent any evidence of the identity of JD1, the Court
finds that the claim that any such person acted "willfully" or
"knowingly" in violating the substantive provisions of the
Maryland Code or the FCRA would be based on speculation and
without an adequate evidentiary basis.  For example, it is
quite possible that JD1 could have acted based upon an
innocent mistake of fact. Thus, Count VI, stating a claim
against JD1 for such acts, will be dismissed.

Defendants argue that, to the extent that their liability
is premised on the actions of JD1, they are entitled to
summary judgment, as there is no evidence to show that JD1 was
an employee or agent of Defendants.  As previously stated, the
Court agrees.

Finally, Defendants contend that, to the extent that they
could be held liable themselves under the FCRA and Maryland
Code, there is an absence of evidence that they took any

13

actions that would be actionable under the statutes and that
their actions, if any, were knowing or willful.

As an initial matter, Plaintiffs have not alleged any
specific actions by BAAF that would serve to confer liability
on BAAF in the absence of <u>respondeat</u> <u>superior</u> liability based
upon an agency relationship with the unknown JD1.  Thus, it
appears that on that basis alone BAAF would be entitled to
summary judgment in its favor.

Moreover, even if Plaintiffs had alleged some action by
BAAF that could, in the absence of <u>respondeat</u> <u>superior</u>, confer
liability, BAAF would still be entitled to summary judgment.
Plaintiff has failed to produce any evidence whatsoever of
knowing, intentional, or willful conduct by BAAF in violating
either the FCRA or the corresponding Maryland statute.

To establish a "knowing" or "willful" violation under the
FCRA, the plaintiff bears the burden of showing that the
Defendant "knowingly and intentionally committed an act in
conscious disregard for the rights of the consumer."  <u>Dalton
v. Capitol Assoc. Indus.</u>, 257 F.3d 409, 418 (4th Cir. 2000),
<u>citing</u> <u>Pinner v. Schmidt</u>, 805 F.2d 1258, 1263 (5th Cir. 1986).
The <u>Dalton</u> court went on to note that summary judgment may be
appropriate on this issue, despite the general rule that state
of mind determinations create issues of fact, when evidence of

14

willfulness or intent is "wholly lacking."  Id., see also
Letscher v. Swiss Bank Corp., 1997 WL 304894 (S.D.N.Y. 1997)
(granting summary judgment to defendants where the only
evidence of improper motive was speculation by plaintiff).

Plaintiffs have not met their burden of presenting some
evidence that BAAF knew it was taking or intended to take any
acts in "conscious disregard" for Plaintiffs' rights.  In the
absence of such evidence, Defendants are entitled to summary
judgment on Counts I, VI, and VII of the Amended Complaint.


5.   Negligent Violations

Counts III and VIII of the Amended Complaint state claims
for negligent violations of the FCRA and corresponding
provisions of the Maryland Commercial Code.

As previously discussed, there is no evidence to support
BAAF's respondeat superior liability on a negligence theory
based on the actions of the unknown JD1.  However, the claims
presented require the Court to consider also whether the
Complaint states a viable claim against BAAF for its own
negligent actions leading to violations of the FCRA.

Plaintiffs present no evidence of actual actions or
omissions by BAAF that would constitute negligence.  Instead,
they argue that the fact that a credit request attributed to

15

BAAF appeared on their credit reports is sufficient to show
that BAAF must have at least been negligent in allowing such a
request to be made.

It appears that Plaintiffs seek to impose liability for
negligence under a theory of res ipsa loquitor.  In other
words, they contend that the fact that their reports were
accessed using an account number that belonged to BAAF means
that BAAF must been negligent.

Maryland courts have applied the doctrine of res ipsa
loquitor to establish a "permissible inference" of negligence
in "limited" cases where the plaintiff shows that "he has been
injured (a) by a casualty of a sort which usually does not
occur in the absence of negligence, (b) by an instrumentality
within the defendant's exclusive control, (c) under
circumstances indicating that it was not caused by any
involuntary act or neglect of the plaintiff."  Munzert v.
American Stores Co., 232 Md. 97, 103 (Md. 1963); see also Toy
v. Atlantic Gulf & Pacific Co., 176 Md. 197, 208-210 (Md.
1939) (res ipsa doctrine only applies when "the facts
established... are so clear and unambiguous that the proper
natural inference immediately arises... that the injury
complained of was caused by the defendant's negligence").

16

The Court finds that the injury allegedly suffered by the Plaintiffs in this case is not one that "usually does not occur in the absence of negligence."  The only evidence of negligence presented is the fact that the name "Banc Amer Auto" and an account number that belonged to BAAF (and to its predecessor in interest) appeared on Plaintiff's credit reports.  The Court finds that this result is no more consistent with the existence of negligence on the part of BAAF than it is with other theories on which BAAF would not be negligent.  For example, the account number could have been stolen by an outsider, despite all reasonable precautions taken by BAAF to protect its secrecy.  Or, the account number could have been stolen or retained by someone with access to BAAF's predecessor-in-interest, Oxford.  There is simply insufficient evidence to establish a "natural inference" of negligence on the part of BAAF.

In the absence of any evidence of acts or omissions constituting a breach of BAAF's duty of care, and because the facts do not support an inference that the harm to Plaintiffs would not have occurred in the absence of BAAF's negligence, Defendants are entitled to summary judgment on Counts II and VIII of the Amended Complaint.

17

6.    <u>Count XI:  Computer Fraud and Abuse Act</u>

Count XI states a claim under the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. §1030, et. seq.  The CFAA provides, in relevant part:

> Whoever... intentionally accesses a computer without authorization or exceeds authorized access and thereby obtains... information contained in a financial record of a financial institution... or contained in a file of a consumer reporting agency on a consumer, as such terms are defined in the a Fair Credit Reporting Act...shall be punished as provided in subsection (c) of this section.

18 U.S.C. §1030(a)(2)(a)-(b).  Section 1030(g) creates a civil cause of action in individuals injured by violations of the CFAA, and provides for compensatory damages and injunctive relief to be granted.

Count XI of the Amended Complaint alleges that JD1 violated the CFAA by exceeding his authorized access to Trans Union computers.  The Complaint alleges that Trans Union had provided such access to BAAF for the purpose of obtaining permissible credit reports on BAAF customers, and that JD1 exceeded this access when he obtained Plaintiffs' credit reports without a proper purpose from Trans Union.  Plaintiffs seek to hold BAAF liable for these actions of JD1.

18

As previously discussed in the context of Plaintiffs' FCRA and state-law claims, Plaintiffs have presented no evidence to establish that JD1 was an employee or agent of BAAF. Thus, on the evidence presented, no reasonable jury could find BAAF liable for the alleged acts of JD1.

Further, and also as previously discussed, Plaintiffs have made no showing of "intentional" actions by JD1 as would be necessary to satisfy the elements of the CFAA. In the absence of any evidence of intentionality, Defendants are entitled to summary judgment on Plaintiffs' CFAA claim.


IV.  <u>CONCLUSION</u>

For the foregoing reasons:

1.  Defendants' Motion for Summary Judgment is GRANTED.

2.  Plaintiff's Motion for Partial Summary Judgment is DENIED.

3.  Defendants' Motion to Exclude Testimony of Evan D. Hendricks is DENIED.

4.  Judgment shall be entered by separate Order.


SO ORDERED, on <u>Tuesday, March 18, 2003</u>.


_____/ s /_____
Marvin J. Garbis
United States District Judge


19