## UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF MARYLAND
### (Northern Division)

| | |
|---|---|
| EARLE AUSHERMAN, et al. | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Civil Action No. MJG-01- 438 |
| | ) SOME EXHIBITS UNDER SEAL |
| BANK OF AMERICA, et al. | ) |
| | ) ORAL HEARING |
| Defendants. | ) REQUESTED |
| _____ | ) |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION
FOR ATTORNEYS' FEES AND REQUEST FOR
<u>EVIDENTIARY HEARING AND ORAL ARGUMENT</u>**

# TABLE OF CONTENTS

**TABLE OF CONTENTS** ......................................................................... i

**TABLE OF AUTHORITIES** ................................................................ iii

**INTRODUCTION**............................................................................... 1

**FACTS** ................................................................................................ 2

    1.   Defendants did not raise the issue of sanctions before the case concluded, thus depriving Plaintiffs of any opportunity to withdraw purportedly sanctionable pleadings. ......................................................................................... 2

    2.   Plaintiffs' settlement offer to provide the identity of John Doe #3 was true when it was made and was made in good faith................................................. 2

**ARGUMENT** ....................................................................................... 7

    1.   Due Process entitles Plaintiffs to respond to Defendants' motion......................... 7

     a.   Defendants have failed to properly set forth the bases on which sanctions are sought against Plaintiffs and Mr. Sweetland......................................... 7

     b.   There was no finding of bad faith. ............................................................. 9

     c.   Defendants did not identify which pleading was sanctionable. ............... 10

    2.   Imposition of attorneys' fees is not warranted because Plaintiffs' positions were colorable.......................................................................................... 11

     a.   The Fourth Circuit's issuance of published decision is evidence that Attorneys' fees are not warranted. ........................................................ 11

     b.   Sufficient factual basis existed to pursue Plaintiffs' FCRA claims. ..................... 12

     c.   Attorney's fees are not warranted for seeking recusal because this was a question of first impression in any court. ........................................... 15

    3.   Defendants' Motion is not timely. ...................................................... 16

    4.   Defendants' requested fees exceed recoverable amounts...................................... 18

     a.   Defendants provide no verification for requested fees, adequate time entries or evidence of appropriate hourly rates.................................... 18

    b.  The fees requested exceed the minimum amount necessary to deter. .................. 24

    c.  Defendants failed to mitigate time spent. ............................................. 25

  5.  Counsel is solely liable for any sanctions. ............................................. 26

    a.  The law of the case is that counsel alone is liable for sanctions. ........................... 27

    b.  Sanctions are unavailable against the Plaintiffs, individually or collectively, as a matter of law under the four theories articulated by Defendants. ......................... 28

            (1) Fed. R. Civ. P. 11 ......................................................................28
            (2) 28 U.S.C. § 1927 .......................................................................29
            (3) The Court's inherent authority .............................................29
            (4) 15 U.S.C. §§ 1681n(c) and 1681o(b) ...................................30

    c.  Defendants do not identify against which Plaintiffs sanctions are sought........... 31

  6.  Defendants' requested sanctions exceed Counsel's ability to pay...................... 31

  7.  Counsel is already being punished for conduct at issue. ...................................... 34

  8.  An oral hearing is requested. ............................................................. 35

**CONCLUSION** ...................................................................................... 37

**TABLE OF AUTHORITIES**

**Cases**

*Arizona v. California*, 460 U.S. 605, 103 S.Ct. 1382, *rehearing denied*,
462 U.S. 1146, 103 S.Ct. 3131 (1983) .......................................................................... 27

*Arnold v. Burger King Corp.*, 719 F.2d 63 (4th Cir. 1983), *cert. denied*,
469 U.S. 826, 105 S.Ct. 108 (1984) ............................................................................ 33

*Association of American Physicians and Surgeons, Inc. v. Clinton*,
187 F.3d 655 (D.C. Cir. 1999) ................................................................................... 10

*Ausherman v. Bank of America*, 212 F.Supp.2d 435 (D. Md. 2002) ...................... 2, 27, 34

*Baker v. Alderman*, 158 F.3d 516 (11th Cir. 1998) ...................................... 16, 29, 31, 32

*Bakker v. Grutman*, 942 F.2d 236 (4th Cir. 1991) .................................................... 28

*Bennett v. Smith*, 2002 WL 169323 (N.D. Ill. Feb. 1, 2002) .................................... 20

*Bernard v. Coyne*, 31 F.3d 842 (9th Cir. 1994) ........................................................ 15

*Big Yank Corp. v. Liberty Mutual Fire Insurance Co.*, 125 F.3d 308 (6th Cir. 1997). ....... 9

*Boim v. Quaranic Literacy Institute*, 2003 WL 1956132 (N.D. Ill. Apr. 24, 2003) ......... 20

*Borowski v. DePuy, Inc.*, 850 F.2d 297 (7th Cir. 1988).............................................. 29

*Brickwood Contractors, Inc. v. Datanet Engineering, Inc.*,
Nos. 00-2324 and 00-2325............................................................................... 17, 18

*Bridgestone/Firestone, Inc. v. Recovery Credit Services, Inc.*, 98 F.3d 13
(2d Cir. 1996)................................................................................................. 30

*Browning v. Kramer*, 931 F.2d 340 (5th Cir. 1991) .................................................. 36

*Brubaker v. City of Richmond*, 943 F.2d 1363 (4th Cir. 1991)............ 10, 12, 14, 15, 16, 24

*Byrne v. Nezhat*, 261 F.3d 1075 (11th Cir. 2001) .................................................. 28, 29

*Case v. Unified School District No. 233, Johnson County, Kansas*,
157 F.3d 1243 (10th Cir. 1998) ......................................................................... 22, 26

*Chambers v. NASCO, Inc.*, 501 U.S. 32, 111 S.Ct. 2123,
*rehearing denied*, 501 U.S. 1269, 112 S.Ct. 12 (1991) ............................................ 30, 35

*Childs v. State Farm Mutual Automobile Insurance Co.*, 29 F.3d 1018
(5th Cir. 1994)..................................................................................... 24

*Christianburg Garment Co. v. EEOC*, 434 U.S. 412, 98 S.Ct. 694 (1978) ..................... 11

*City of Los Angeles v. David*, 538 U.S. 715,123 S.Ct. 1895 (2003) ........................... 36, 37

*CJC Holdings, Inc. v. Wright & Lato, Inc.*, 989 F.2d 791 (5th Cir. 1993) ........................ 16

*Cleveland Demolition Co. v. Azcon Scrap. Corp.*, 827 F.2d 984
(4th Cir. 1987)..................................................................................... 15

*Coffey v. Healthtrust, Inc.*, 1 F.3d 1101 (10th Cir. 1993) .................................................... 14

*Cooter & Gell v. Hartmax Corp.*, 496 U.S. 384, 409, 110 S.Ct. 2447 (1990) ................ 32

*Costar Group, Inc. v. Loopnet*, 106 F.Supp.2d 780 (D. Md. 2000)........................... 19, 23

*Cross & Cross Properties, Ltd. v. Everett Allied Co.*,
886 F.2d 497 (2d Cir. 1989)..................................................................... 28

*DeBauche v. Trani*, 191 F.3d 499 (4th Cir. 1999), *cert. denied*,
529 U.S. 1033, 120 S.Ct. 1451 (2000) ....................................................... 31, 33

*Doering v. Union County Board of Chosen Freeholders*,
857 F.2d 191 (3rd Cir. 1988) ................................................... 24, 32, 34, 35

*Dubois v. United States Department of Agriculture*, 270 F.3d 77
(1st Cir. 2001)..................................................................................... 13

*Embotelladora Agral Regiomontana, S.A. v. Sharp Capital, Inc.*,
952 F. Supp. 415 (N.D. Tex. 1997) ............................................................. 9

*Enercon GMBH v. Erdman*, 13 Fed. Appx. 651,
2001 WL777476 (9th Cir., Jul. 11, 2001)...................................................... 33

*Estate of Calloway v. Marvel Entertainment Group*, 9 F.3d 237
(2d Cir. 1993), *cert. denied*, 511 U.S. 1081, 114 S.Ct. 1829 (1994) ........................... 32

*Evans v. Port Authority of New York*, 273 F.3d 346 (3rd Cir. 2001)........................... 19, 23

*Fahrenz v. Meadow Farm Partnership*, 850 F.2d 207 (4th Cir. 1988)............................... 24

*Gay Officers Action League Puerto Rico*, 247 F.3d 288 (1st Cir. 2001).................... 19, 22

*Griffen v. City of Oklahoma City*, 3 F.3d 336 (10th Cir. 1993) ......................................... 11

iv

*Hadges v. Yonkers Racing Corp.*, 48 F.3d 1320 (2d Cir. 1995) ....................................... 13

*Hamil v. Mobex Managed Services Co.*, 208 F.R.D. 247 (N.D. Ind. 2002) ..................... 18

*Harolds Stores, Inc. v. Dillard Department Stores, Inc.*,
82 F.3d 1533 (10th Cir. 1996) ........................................................................... 20

*Harper v. City of Chicago Heights*, 223 F.3d 593 (7th Cir. 2000), *cert. denied*,
531 U.S. 1127, 121 S.Ct. 883 (2001) ................................................................... 22

*Hathcock v. Navistar*, 53 F.3d 36 (4th Cir. 1995)................................................... 35

*Hensley v. Acon Laboratories, Inc.*, 277 F.3d 535 (4th Cir. 2002)................................ 9, 26

*Hilton Hotels Corp. v. Banov*, 899 F.2d 40 (D.C. Cir. 1990) ..................................... 11

*Hrubec v. National Railroad Passenger Corp.*, 829 F.Supp. 1502 (N.D. Il. 1993) ......... 15

*Hunter v. Earthgrains Company Bakery*, 281 F.3d 144 (4th Cir. 2002) ................ 8, 12, 16

*In re Beard*, 811 F.2d 818 (4th Cir. 1987). ........................................................... 16

*In re Kuntsler*, 914 F.2d 505 (4th Cir. 1990) .................................................. 18, 31, 32, 35

*In re Mroz*, 65 F.3d 1567, 1572 (11th Cir. 1995) .................................................. 10, 11

*In re Prudential Insurance Co. America Sales Practices Litigation
Agent Actions*, 278 F.3d 175 (3d Cir. 2002) ........................................................ 8, 9

*In re Sargent*, 136 F.3d 349 (4th Cir. 1998), *cert. denied*,
525 U.S. 854, 119 S.Ct. 133 (1998)....................................................................... 12

*Jackson v. The Law Firm of O'Hara, Ruberg, Osborne and Taylor*,
875 F.2d 1224 (6th Cir. 1989) ............................................................................. 24, 32

Jane L. v. Bangerter, 61 F.3d 1505 (10th Cir. 1995) ................................................. 21

*Jones v. Pittsburgh National Corp.*, 899 F.2d 1350 (3d Cir. 1990)............................... 8, 32

*K.M.B. Warehouse Distributors, Inc. v. Walker Manufacturing Co.*,
61 F.3d 123 (2d Cir. 1995)................................................................................... 11

*Kansas Public Employees Retirement System v. Reimer & Kroger Assoc.*,
165 F.3d 627 (8th Cir. 1999); ............................................................................. 29

*Kerin v. United States Postal Service*, 218 F.3d 185 (2d Cir. 2000) ............................. 9

*L.B. Foster Co. v. America Piles, Inc.*, 138 F.3d 81 (2d Cir. 1998) .................................. 8

*Mackler v. Cohen*, 225 F.3d 136 (2d Cir. 2000) .......................................................... 36

*Major v. CSX Transportation*, 278 F. Supp.2d 597 (D. Md. 2003)................................. 27

*Martin v. Automobili Lamborghini Exclusive, Inc.*, 307 F.3d 1332 (11th Cir. 2002) . 31, 33

*Matthews v. Lancaster General Hospital*, 87 F.3d 624 (3rd Cir. 1996) ........................... 11

*Mercury Air Group, Inc. v. Mansour*, 237 F.3d 542 (5th Cir. 2001)................................ 24

*MGIC Indemnity Corp. v. Moore*, 952 F.2d 1120 (9th Cir. 1991)................................... 11

*Napier v. Thirty or More Unidentified Federal Agents, Employees or Officers*,
   855 F.2d 1080 (3rd Cir. 1988) ....................................................................... 25

*Nelson v. Piedmont Aviation, Inc.*, 750 F.2d 1234 (4th Cir. 1984),
   *cert. denied,* 471 U.S. 1116, 105 S.Ct. 2358 (1985)...................................... 15

*Northlake Marketing & Supply, Inc. v. Glaverbel, S.A.*, 194 F.R.D. 633
   (N.D. Ill. 2000)............................................................................................. 18

*O'Brien v. Alexander*, 101 F.3d 1479 (2d Cir. 1996). ...................................................... 15

*Oregon RSA No. 6, Inc. v. Castle Rock Cellular of Oregon, L.P.*,
   76 F.3d 1003 (9th Cir. 1996) ........................................................................ 36

*Pennsylvania v. Del. Valley Citizens' Counsel for Clean Air*,
   483 U.S. 711, 107 S.Ct. 3078 (1987)................................................................21

*Proctor & Gamble Co. v. Amway Corp.*, 280 F.3d 519 (5th Cir. 2002)...................... 8, 29

*Ramos v. Lamm*, 713 F.2d 546 (10th Cir. 1983)...............................................................21

*Resolution Trust Corp. v. Dabney*, 73 F.3d 262 (10th Cir. 1995) ...................................... 9

*Roadway Express, Inc. v. Piper*, 447 U.S. 752, 100 S.Ct. 2455 (1980) .................. 7, 8, 35

*Robinson v. Richie*, 646 F.2d 147 (4th Cir. 1981) ......................................................... 29

*Salovaara v. Eckert*, 222 F.3d 19 (2d Cir. 2000)............................................................ 29

*Sassower v. Field*, 973 F.2d 75 (2d Cir. 1992), *cert. denied,*
   507 U.S. 1043, 113 S.Ct. 1879 (1993).......................................................... 33

*Schoenberger v. Oselka*, 909 F.2d 1086 (7th Cir. 1990) .............................................. 11

*Schrag v. Simpson*, 141 F.3d 1185 (10th Cir. 1998) ........................................... 28

*Servicemaster Co., L.P. v. FTR Transport, Inc.*, 868 F. Supp. 90 (E.D. Pa. 1994) .......... 14

*Shepherd v. American Broadcasting Companies, Inc.*, 62 F.3d 1469 (D.C. Cir. 1995) ... 26

*Tenkku v. Normandy Bank*, 348 F.3d 737 (8th Cir. 2003) ................................... 30

*Thomas v. Treasury Management Association*, 158 F.R.D. 364 (D. Md. 1994) .......... 9, 17

*Topalian v. Ehrman*, 3 F.3d 931 (5th Cir. 1993). ............................................... 25

*United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219
    (10th Cir. 2000)............................................................................ 19, 20, 23

*United States v. International Brotherhood of Teamsters,* 948 F.2d 1338
    (2d Cir. 1994)........................................................................................... 29

*United States v. Pastor Medical Associates P.C.*, 224 F.Supp.2d 342
(D. Mass. 2002)............................................................................................ 19

*United States v. Seltzer*, 227 F.3d 36 (2d Cir. 2000) .......................................... 36

*Vavarro-Ayala v. Nunez,* 968 F.2d 1421 (1st Cir. 1992)....................................... 24

*Wagner v. Allied Chem. Corp.*, 623 F.Supp. 1407 (D. Md. 1985) ...................... 14

*White v. General Motors Corp.*, 908 F.2d 675 (10th Cir. 1990) .............. 24, 25, 30, 32, 35

**Statutes**

15 U.S.C. § 1681............................................................ 1, 7, 9, 10, 17, 30, 33
28 U.S.C. § 455................................................................................. 15
28 U.S.C. § 1332
28 U.S.C. § 1920........................................................................... 8, 9
28 U.S.C. § 1927 ........................................................ 1, 7, 8, 9, 29, 33, 36

**Rules**

Fed. R. Civ. P. 11 ........................................ 1, 2, 7, 10, 17, 18, 23, 28, 29, 33, 36
Fourth Circuit Local Rule 21(b) ..................................................... 16
Fourth Circuit Local Rule 36(a)......................................................12
Local Rule 105.6.......................................................................35
Local Rule 105.8.b....................................................................1, 7, 36

**Constitutional Provisions**

Fifth Amendment........................................................................35, 36

## INTRODUCTION

Defendants filed a Motion for Attorney's Fees on April 1, 2003. The legal basis of Defendants' request for attorney's fees was 15 U.S.C. §§1681n and o, Fed. R. Civ. P. 11, 28 U.S.C. §1927 and this Court's inherent authority. Defendants' Motion for Attorney's Fees at pp.1, 4.

In their Opposition, Plaintiffs noted that under Local Rule 105.8.b, "the Court *shall not grant* any motion for fees under Fed. R. Civ. P. 11 or 28 U.S.C. § 1927 without requesting a response from the affected party." (emphasis added). *See* Statement of Points and Authorities in Opposition to Defendants' Motion for Attorney's Fees, page 1. Plaintiffs requested an opportunity to respond to Defendants' Motion in the event the Court considered imposing sanctions under either Rule 11 or Section 1927. *Id.* at n.1. This Court requested a response to Defendants' Motion pursuant to Local Rule 105.8.b on February 24, 2004.

In its Order of August 11, 2003, this Court stated "[o]n the current state of the record, the Court concludes that Defendants should recover legal fees." See August 11, 2003 Order, page 1. The Order provided that Plaintiffs may file a further memorandum pending resolution of the appeal. *See* August 11, 2003 Order at page 2, ¶3. The August 11 Order did not specify under which of the four theories raised by Defendants that recovery of legal fees was warranted. It also did not specify against whom the fees were recoverable: counsel, Plaintiffs or both.

## FACTS

**1.     Defendants did not raise the issue of sanctions before the case concluded, thus depriving plaintiffs of any opportunity to withdraw purportedly sanctionable pleadings.**

Plaintiffs filed their Motion for Partial Summary Judgment on May 17, 2002. By Order, discovery was still ongoing. Defendants filed a Cross-Motion for Summary Judgment on September 16, 2002, four months after Plaintiffs filed their Motion for Partial Summary Judgment. Plaintiffs filed a timely reply. At no time did Defendants advise Plaintiffs that Defendants considered the Plaintiffs' Motion sanctionable, nor did they serve a motion on Plaintiffs within 21 days as required under Fed. R. Civ. P. 11 (c)(1)(A) or otherwise attempt to influence Plaintiffs to withdraw their Motion for Partial Summary Judgment.

Defendants did not raise the instant request for attorney's fees until fourteen days after this Court granted summary judgment in its Order of March 18, 2003. By that time, Plaintiffs could not withdraw any of the pleadings that Defendants now contend are sanctionable.

**2.     Plaintiffs' settlement offer to provide the identity of John Doe #3 was true when it was made and was made in good faith.**

Defendants' principal argument for the imposition of sanctions is that Plaintiffs' demonstrated bad faith conduct by their counsel's alleged dishonesty during settlement discussions. *See* Defendants' Memorandum in Support of Motion for Attorneys' Fees (hereinafter, "Defendants' Memorandum") at page 4, n.5 and page 14. Defendants' argument for sanctions under the Court's inherent authority was considered by Judge Grimm and rejected. *See Ausherman v. Bank of America*, 212 F.Supp.2d 435, 444 (D.

2

Md. 2002) (settlement negotiations insufficiently connected to justify sanctions under the inherent authority of the Court).

Relying solely upon Mr. Sweetland's answers to his adversary's questions during his deposition, Magistrate Judge Grimm concluded that Mr. Sweetland lied when he represented in the April 24th settlement proposal that he would be able to provide the identity of John Doe #3 to the Bank of America. Admittedly, counsel's testimony is confusing on this issue, because his statement that he "lied" came on the heels of a set of questions pertaining to the truth of several representations in the April 24th letter. Mr. Sweetland admitted that the representation that he had a "confidential arrangement" was nothing more than "settlement bluster" – that he did not have a "confidential arrangement" to ascertain John Doe #3's identity:

> Q:    Well, in your letter, in the second paragraph, you indicate, please be advised that I do not at present know the identity of this individual. I have made confidential arrangements, however, to have that information provided to me once any possibility of my own deposition or answers to interrogatories has passed.
>
> What confidential arrangements are you talking about?
>
> A:    There were none. That was language put in there for the purposes of settlement, bluster.
>
> Q:    So this is a lie?
>
> A:    That is correct. It is not true.

*See Exhibit 1 (R. Sweetland dep.) at 74-75.*

Mr. Sweetland had a reasonable basis to believe there was a John Doe #3. He had an arrangement to ascertain John Doe #3's identity and he testified to that arrangement repeatedly:

> Q:    Who is John Doe Number 3?

3

A:      That would just be a nomed (sic) litigation that I would use for the person that I believe to be the person outside of Bank of America that was getting these credit reports.

. . .

Q:      So why are we calling the John Doe in your April 24th, 2002 letter that's marked as Exhibit Number 6 John Doe Number 3?

A:      Well, my belief is, based upon my conversations with Mr. Moore, that there's somebody else involved.

Q:      And when did you have those conversations with Mr. Moore?

A:      This would have been later in the case, probably post the initiation of discovery.

Q:      Give me a month time frame.

A:      If discovery began in December of 2001, this would have had to have been sometime in the first quarter of this year.

Q:      So sometime in January through March of 2002?

A:      That's correct.

Q:      You had a conversation with Mr. Moore?

A:      Well, one or more.

. . .

Q:      Well, specifically you described him in your letter as the kingpin of the network which obtained credit reports from Banc, with a C, of America Auto, right?

A:      That's right.

Q:      And this information is from Mr. Moore?

A:      That's correct.

*Id.* at 71-73.

However, the confusion arose when Mr. Sweetland was asked, after testifying that the representation about a "confidential arrangement" was settlement bluster, whether "this statement" was a lie.  Mr. Sweetland understood the phrase "this statement" to mean

his representation regarding the "confidential arrangement" that he had just previously stated was "settlement bluster".[1]  *See* Exhibit 2 (R. Sweetland aff.) at ¶9.  Mr. Sweetland's testimony indicated that he made arrangements to ascertain the identity of John Doe #3, but that he told his source, Mr. Moore, to refrain from disclosing the identity of the source because Mr. Sweetland might be compelled by the Court to disclose it to Bank of America in discovery.  *See* Exhibit 1 (R. Sweetland dep.) at 74-75.

Mr. Sweetland was not asked to identify when he first realized that Mr. Moore would not provide him with the name of John Doe #3.  This fact is of pivotal importance because it goes directly to the issue of bad faith, or lack thereof.  Mr. Sweetland was not given the opportunity to provide any explanation for his response.  Magistrate Judge Grimm did not have the opportunity to consider Mr. Moore's testimony in reaching his determination.[2]

A review of the chronology of this matter demonstrates the absence of any bad faith.  Mr. Moore attested, in his affidavit, that Mr. Sweetland obtained Mr. Moore's permission, sometime in the late winter or early spring of 2002, to identify Mr. Moore as the source of the information concerning the claims against Bank of America.  *See Exhibit 3 (M. Moore aff.)* at ¶7.  Thereafter, Mr. Sweetland advised Mr. Moore that he was in settlement discussions with Bank of America.  Mr. Moore advised Mr. Sweetland that he could obtain the identity of John Doe #3, the person who was heading some

---

[1]      As for the argument that Mr. Sweetland admitted that it was a "lie", he subsequently took issue with that characterization of the posturing in his settlement proposal. *See Exhibit 1 (R. Sweetland dep.)* at 79.

[2]      Defendants never took the deposition of Mr. Moore after deposing Mr. Sweetland to obtain his identity.

component of the ring which was unlawfully selling credit reports. *Id. at ¶8.* Mr.
Sweetland told Mr. Moore not to develop any more information yet, because he was
concerned that he might be forced to divulge it as part of the ongoing discovery dispute
with Defendants. *Id.* A few days later, Mr. Moore told Mr. Sweetland that he had a
change of heart and would not provide the name of John Doe #3, out of concern for
retaliation by John Doe #3 against himself or his family. *Id.*

On the key issue of whether Mr. Sweetland knew, when he wrote the April 24th
letter, that he would not be able to obtain John Doe #3's identity, Mr. Moore's affidavit
states, "I have also read the settlement letter that Mr. Sweetland provided Bank of
America's attorney. The information in Mr. Sweetland's settlement letter accurately
reflects what I told him at that time I was willing to provide, although the use of the terms
John Doe #3 and kingpin are Mr. Sweetland's, not my own." *Id., ¶12.* Thus, Mr.
Moore's affidavit shows that at the time Mr. Sweetland wrote the settlement proposal,
Mr. Moore was still willing to provide him with the identity of John Doe #3.

Indeed, after Mr. Moore informed Mr. Sweetland that he would be unable to
provide the identity of John Doe #3, Mr. Sweetland advised Defendants' counsel that
"the settlement parameters offered in my letter of April 24 are hereby withdrawn." *See*
Exhibit 4. Mr. Sweetland's letter withdrawing his "settlement parameters" was dated
April 30, 2002, only six days after he wrote the April 24th settlement proposal. This letter
to Defendants' counsel was written shortly after Mr. Moore advised Mr. Sweetland that
he would not disclose the identity of John Doe #3. Thus, as soon as Mr. Sweetland
learned that he could not fulfill his settlement proposal to provide the identity of John
Doe #3 to Defendants, he promptly retracted the proposal. Rather than being deceptive,

Mr. Sweetland was promptly forthright with the Defendants and their attorneys. In short, Mr. Sweetland did not act in bad faith.

**ARGUMENT**

**1.      Due Process entitles Plaintiffs to respond to Defendants' motion.**

Defendants assert on page 3 of their Memorandum that their Motion for Attorneys' Fees (hereinafter "Defendants' Motion") has already been granted by this Court. This is an incorrect characterization of the record. Plaintiffs and Mr. Sweetland have just been granted their opportunity to respond substantively to Defendants' Motion. Local Rule 105.8.b provides that the Court "shall not grant" any motion for fees under Fed. R. Civ. P. 11 or 28 U.S.C. § 1927 without requesting a response from the affected party. This Court could not have granted Defendants' Motion for Attorneys' Fees on August 11, 2003, as Defendants assert, because no response to Defendants' Motion had yet been ordered by the Court. The Court ordered a response from Plaintiffs and Mr. Sweetland in its Order of February 24, 2004.

If Plaintiffs are not afforded the opportunity to have the instant Opposition considered in its entirety, they will be deprived of their due process rights. The imposition of monetary sanctions by a court implicates fundamental notions of due process and thus requires "fair notice and an opportunity for a hearing on the record." *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 767, 100 S.Ct. 2455, 2464 (1980).

**a.  Defendants have failed to properly set forth the bases on which sanctions are sought against Plaintiffs and Mr. Sweetland.**

The legal basis of Defendants' request for attorney's fees was 15 U.S.C. §§1681n and o, Fed. R. Civ. P. 11, 28 U.S.C. §1927 and this Court's inherent authority. *See* Defendants' Motion for Attorney's Fees at pp.1, 4. In its Order of August 11, 2003, this

7

Court stated "[o]n the current state of the record, the Court concludes that Defendants should recover legal fees." See August 11, 2003 Order, page 1. Defendants raised four (4) theories in support of their claim for fees. The August 11 Order did not, however, specify under which of these theories recovery was warranted. Such a determination is a prerequisite to the imposition of sanctions because the four theories under which recovery is sought have differing requirements for their application.

Defendants raised every possible theory for obtaining attorneys' fees and left it for Plaintiffs and this Court to sort out which ones might apply. The Court must ensure that the authority relied upon for the granting of sanctions supports the sanctions that are ultimately imposed. *Hunter v. Earthgrains Company Bakery*, 281 F.3d 144, 150 (4th Cir. 2002). It is error to fail to differentiate between the bases of sanctions imposed. *Jones v. Pittsburgh National Corp.*, 899 F.2d 1350, 1358 (3d Cir. 1990). *See also Proctor & Gamble Co. v. Amway Corp.*, 280 F.3d 519, 526 (5th Cir. 2002); *L.B. Foster Co. v. America Piles, Inc.*, 138 F.3d 81, 89 (2d Cir. 1998). Due process requires particularized notice of the precise sanctioning tool the Court intends to apply. *In re Prudential Insurance Co. America Sales Practices Litigation Agent Actions*, 278 F.3d 175, 191 (3d Cir. 2002). Defendants merely asserted four different theories without any analysis of how, if at all, each theory would apply here.

For example, Defendants seek attorneys' fees under 28 U.S.C. § 1927, but attorneys' fees are not recoverable under 28 U.S.C. §1927. Excess costs under §1927 only include those items enumerated under 28 U.S.C. §1920 that ordinarily may be taxed to the losing party. *Roadway Express, Inc. v. Piper, supra*, 447 U.S. at 757-61, 100 S.Ct. at 2459-62; *In re Prudential Insurance Co. America Sales Practices Litigation Agent*

*Actions, supra,* 278 F.3d at 188; *Resolution Trust Corp. v. Dabney,* 73 F.3d 262, 267 (10th

Cir. 1995). Attorneys' fees are not a compensable cost under 28 U.S.C. § 1920.

*Embotelladora Agral Regiomontana, S.A. v. Sharp Capital, Inc.,* 952 F. Supp. 415, 418-

19 (N.D. Texas 1997).

      **b.**      **There was no finding of bad faith.**

     This Court did not state in its Orders of August 11, 2002 or February 24, 2004,

what conduct warranted an imposition of attorney's fees. The plain language of 15

U.S.C. §§ 1681n(c) and 1681o(b) requires a determination of bad faith prior to the award

of attorneys' fees. A finding of willful bad faith is a prerequisite for imposing sanctions

under 28 U.S.C. § 1927. *In re Prudential Insurance Co. America Sales Practices*

*Litigation Agent Actions, supra,* 278 F.3d at 181; *Thomas v. Treasury Management*

*Association,* 158 F.R.D. 364, 371 (D. Md. 1994). Shifting attorneys' fees under the

Court's inherent authority is limited to "the extraordinary circumstances where bad faith

or abuse can form a basis for doing so." *Hensley v. Acon Laboratories, Inc.,* 277 F.3d

535, 544 (4th Cir. 2002).

     To award attorney's fees under its inherent authority, the district court must make

actual findings of fact that the claims advanced were meritless, that counsel knew or

should have known this, and that the motive for filing was for an improper purpose such

as harassment. *Big Yank Corp. v. Liberty Mutual Fire Insurance Co.,* 125 F.3d 308, 313-

14 (6th Cir. 1997). Neither meritlessness alone nor improper purpose alone will suffice.

*Kerin v. United States Postal Service,* 218 F.3d 185, 190 (2d Cir. 2000). The finding of

bad faith required to support an award of attorney's fees must be supported by clear and

convincing evidence and generally requires the trier of fact to reach a firm conviction of

the truth on the evidence about which he or she is certain. *Association of American Physicians and Surgeons, Inc. v. Clinton*, 187 F.3d 655, 660 (D.C. Cir. 1999).

As set forth above, there was no bad faith in the settlement offer made to Defendants (or indeed, in any other aspect of this litigation). When Plaintiffs offered to provide Defendants with the identity of John Doe #3, they believed they could. When they were no longer in a position to offer this information, they immediately withdrew their settlement offer.

### c. Defendants did not identify which pleading was sanctionable.

Sanctions may only be imposed under Fed. R. Civ. P. 11 in connection with a specific pleading. Similarly, attorney's fees are only available under 15 U.S.C. §§ 1681n(c) and 1681o(b) in connection with an identifiable pleading that was filed in bad faith. The only pleading related to the merits of the case filed by Plaintiffs after the close of discovery was the Opposition to the Cross-Motion for Summary Judgment. A review of Defendants' claims of time worked demonstrates that Defendants claim $16,440 in connection with filing a Reply to Plaintiffs' Opposition. *See* Exhibit 1 to Defendants' Memorandum at pp.4-5

Defendants' contention that Plaintiffs had a duty to abandon the case at some stage is erroneous. *See* Defendants' Memorandum at page 16. As a matter of law in this Circuit, sanctions' provisions such as Rule 11 do not impose a duty to continuously reevaluate the merits of a case if litigation develops nor does Rule 11 impose a duty to dismiss a case once it appears that the case no longer has a factual or legal basis. *Brubaker v. City of Richmond*, 943 F.2d, 1363, 1381-82. This position is also the prevailing view in the majority of the other Circuits. *See, e.g., In re Mroz*, 65 F.3d 1567,

1572, 1573 (11th Cir. 1995); *Griffen v. City of Oklahoma City*, 3 F.3d 336, 339 (10th Cir.

1993); *MGIC Indemnity Corp. v. Moore*, 952 F.2d 1120, 1121-22 (9th Cir. 1991); *Hilton

Hotels Corp. v. Banov*, 899 F.2d 40, 44-45 (D.C. Cir. 1990); *Schoenberger v. Oselka*, 909

F.2d 1086, 1087 (7th Cir. 1990). There is thus no basis in law to suggest Plaintiffs were

obligated to somehow voluntarily dismiss this case during discovery or at its conclusion

or face sanctions.

> **2.    Imposition of attorneys' fees is not warranted because plaintiffs' positions were colorable.**

There was sufficient evidence of a FCRA violation by the Defendants to justify

the suit filed here. An action is not unreasonable or without foundation merely because

the plaintiff does not prevail. *Christianburg Garment Co. v. EEOC*, 434 U.S. 412, 421-

22, 98 S.Ct. 694, 700-01 (1978). *See also Matthews v. Lancaster General Hospital*, 87

F.3d 624, 642 (3rd Cir. 1996) (it is important to resist the understandable temptation to

engage in post hoc reasoning by concluding that, because he did not ultimately prevail,

his actions must have been unreasonable). Sanctions should only be imposed if it is

patently clear that the claim had no chance of success, and all doubts should be resolved

in favor of the signing attorney. *K.M.B. Warehouse Distributors, Inc. v. Walker

Manufacturing Co.*, 61 F.3d 123, 131 (2d Cir. 1995).

> **a. The Fourth Cir cuit's issuance of published decision is evidence that Attorneys' fees are not warranted.**

The Fourth Circuit's issuance of a published decision in the appeal of this case is

an indication of the Fourth Circuit's evaluation of the merits in a case of an otherwise

unsuccessful appeal. Decisions are only published in the Fourth Circuit under

certain circumstances. Fourth Circuit Local Rule 36(a).[3]

"It is axiomatic that asserting a losing position, even one that fails to survive summary judgment, is not of itself sanctionable." *Hunter v. Earthgrains Company Bakery*, 281 F.3d 133, 151 (4th Cir. 2002). Sanctions should only be imposed if a legal argument has "absolutely no chance of success under the existing precedent." *In re Sargent*, 136 F.3d 349, 352 (4th Cir. 1998), *cert. denied*, 525 U.S. 854, 119 S.Ct. 133 (1998). "Creative claims, coupled with even ambiguous or inconsequential facts, may merit dismissal, but not punishment." *Brubaker v. City of Richmond*, 943 F.2d at 1373 (4th Cir. 1991) (internal quotations omitted).

If Plaintiffs' position had no chance of success under existing precedent it would have been unnecessary for the Fourth Circuit to issue a published decision. The fact that the Fourth Circuit chose to issue a published decision supports Plaintiffs' position that sanctions are not warranted for the prosecution of FCRA claims against Defendants. Plaintiffs' claims arguably had some merit to warrant this treatment on appeal.

**b. Sufficient factual basis existed to pursue Plaintiffs' FCRA claims.**

A sufficient factual basis for pursuit of the claims against Defendants existed at every stage of these proceedings. It is undisputed that Mr. Sweetland learned from a former client that credit reports were being obtained by Defendants. There is nothing sanctionable about relying on information from such a source. An attorney's obligation

---

[3]    The Fourth Circuit issues published decisions if the opinion satisfies one or more of the standards for publication: 1) it establishes, alters, modifies, clarifies, or explains a rule of law within this Circuit; 2) involves a legal issue of continuing public interest; 3) criticizes existing law; 4) contains a historical review of a legal rule that is not duplicative; or 5) resolves a conflict between panels of this Court, or creates a conflict with a decision in another circuit. The overwhelming majority of appeals before the Fourth Circuit are disposed of by unpublished, *per curiam* decisions decided without oral argument.

to conduct a reasonable prefiling inquiry does not preclude him from reliance on information from other persons. *Dubois v. United States Department of Agriculture*, 270 F.3d 77, 82) (1st Cir. 2001). An attorney is entitled to rely upon the representations of a client, as in the case at bar, without fear of sanctions. *See, e.g., Hadges v. Yonkers Racing Corp.*, 48 F.3d 1320, 1329-30 (2d Cir. 1995).

Mr. Sweetland did not rely upon his former client's representations alone in conducting his prefiling inquiry. He ascertained from the Plaintiffs in the case at bar whether or not they had a relationship with Defendants that may explain credit reports having been obtained. *See* Exhibit 1 at 47-48. He also checked with credit report provider Trans Union to verify that credit reports were obtained by Defendants. *See id.* at 32-34.

After commencement of the suit, Plaintiffs and Defendants jointly moved this Court for a subpoena to the three major credit bureaus to obtain complete records of Plaintiffs' credit reports. This request was granted by the Court in its Order of February 16, 2001. It is undisputed that the credit reports obtained by this subpoena showed entries (*i.e.*, an apparent request for a credit report) from an entity associated with Defendants. The existence of these entries provided corroborative evidence of the representations of counsel's former client.

The parties then engaged in discovery, during which Defendants could offer no explanation why Plaintiffs' credit reports had an entry showing that Defendants obtained the credit reports. Defendants' inability to identify any permissible purpose for the credit reports was *prima facie* evidence of a violation of the Fair Credit Reporting Act.

Plaintiffs provided the results of the discovery to an expert witness, Evan Hendricks. This Court denied Defendants' Motion to Exclude Mr. Hendrick's testimony in its Order of March 18, 2003. Mr. Hendricks provided an opinion indicating the merit in Plaintiffs' suit. *See* Exhibit 5. ("It is my opinion that [Defendants] obtained plaintiffs' consumer reports."). Plaintiffs were entitled to rely upon the opinion of an independent expert in opposing Defendants' Motion for Summary Judgment, particularly given that this Court did not exclude the report. The existence of expert testimony upon which a party relies militates against imposition of sanctions because the existence of that testimony provides a reasonable basis for a suit. *Coffey v. Healthtrust, Inc.*, 1 F.3d 1101, 1104 (10th Cir. 1993); *Wagner v. Allied Chem. Corp.*, 623 F.Supp. 1407, 1411-12 (D. Md. 1985); *Servicemaster Co., L.P. v. FTR Transport, Inc.*, 868 F. Supp. 90, 97 (E.D. Pa. 1994).

When, during discovery, Plaintiffs determined they could identify no John Doe parties, they seasonably moved to amend to remove the John Doe allegations from the Amended Complaint. *See* Plaintiffs June 6, 2002 Motion to Amend to Add Class Allegations. That Motion to Amend was denied by this Court on October 2, 2002, after Defendants filed their Cross-Motion for Summary Judgment on September 16. The John Doe allegations are thus an improper basis of a sanction because Plaintiffs attempted to remove those allegations from the Complaint and the Court of Appeals ruled the allegations were irrelevant to the disposition of the case.

Rule 11 does not require that a judge agree with a plaintiff's allegations. Rather, it requires that the allegations must merely be supported by some evidence. *Brubaker v. City of Richmond*, 943 F.2d 1363, 1378 (4th Cir. 1991). Such evidence existed. There

14

were credit report inquiries, which Plaintiffs were entitled to fully explore through discovery. "[S]anctions may not be imposed unless a particular allegation is utterly lacking in support." *O'Brien v. Alexander*, 101 F.3d 1479, 1489 (2d Cir. 1996). Plaintiffs allegations were never "utterly lacking in support."

    **c.  Attorney's fees are not warranted for seeking recusal because this was a question of first impression in any court.**

Prior to the case at bar, no federal or state court had ever ruled whether a judicial officer may sit in a case where a party (or subsidiary/affiliate of a party) held his or her mortgage. Neither the magistrate judge, nor this Court nor the Court of appeals cited any court decision that would have guided Plaintiffs on the recusal issue where a Bank of America entity held the magistrate judge's mortgage.[4] It was thus a matter of first impression for which Plaintiffs and their counsel were entitled to seek an extension or modification of the standards under 28 U.S.C. § 455(a). Sanctions are not appropriate when dealing with matters of first impression. *Hrubec v. National Railroad Passenger Corp.*, 829 F.Supp. 1502, 1507 (N.D. Il. 1993) *citing Nelson v. Piedmont Aviation, Inc.*, 750 F.2d 1234, 1238 (4th Cir. 1984), *cert. denied*, 471 U.S. 1116, 105 S.Ct. 2358 (1985).

"Where neither the Supreme Court nor any courts within this circuit have ruled on the issue and the statute itself does not offer a clear answer, the issue is not one on which a plaintiff has 'absolutely no chance of success.'" *Brubaker v. City of Richmond*, 943 F.2d at 1378 *quoting Cleveland v. Demolition Co.*, 827 F.2d 984, 988 (4th Cir. 1987). To impose sanctions for taking a position for which there is no contrary authority would

---

[4]    The only authority on this issue was the Judicial Conference's Compendium of Selected Opinions. Unlike statutes, case law, Restatements or law review articles, the Compendium of Selected Opinions is not generally available or widely used by the public. Furthermore, federal judges are not bound by the rulings it summarizes. It is purely advisory. *Bernard v. Coyne*, 31 F.3d 842, 844 (9th Cir. 1994).

have a chilling effect on litigants. *Id. See also CJC Holdings, Inc. v. Wright & Lato, Inc.*, 989 F.2d 791, 794 (5th Cir. 1993) (trial court should not impose sanctions for advocacy of plausible legal theory; misapplication of sanctions can chill counsel's enthusiasm and stifle creativity of litigants pursuing novel factual or legal theories). *See also Baker v. Alderman*, 158 F.3d 516, 524 (11th Cir. 1998) (purpose of sanctions is not to deter novel legal theories).

Defendants' suggestion that Plaintiffs' mandamus petition is sanctionable is flawed in three respects. First, Fourth Circuit Local Rule 21(b) does not permit a response to a petition for writ of mandamus unless one is requested by the Court of Appeals. No response was requested, so Defendants cannot maintain they needed to incur expenses to deal with Plaintiffs' Petition.[5] Second, mandamus is available in this Circuit in questions of recusal. *In re Beard*, 811 F.2d 818, 827 (4th Cir. 1987). There was thus nothing unusual in Plaintiffs seeking mandamus in this issue of first impression.

Third and most persuasively, this Honorable Court stated "Plaintiffs are free to proceed in an appellate court to obtain a writ of mandamus requiring recusal." *See* September 20, 2002, Memorandum and Order Re: Recusal. It cannot be found that Plaintiffs engaged in bad faith in filing a petition for writ of mandamus where this Court specifically acknowledged Plaintiffs' right to do so.

### 3.   Defendants' Motion is not timely.

A party has an obligation to notify its opponent and the court at the earliest possible date of its intention to pursue sanctions. *Hunter v. Earthgrains Company Bakery, supra*, 281 F.3d at 152. Providing a party with 21 days to withdraw an

---

[5]      Defendants seek $665 for work on a petition for which no response from them was even permitted.

objectionable pleading is an prerequisite to imposition of sanctions under Fed. R. Civ. P. 11. *Thomas v. Treasury Management Assn.*, 158 F.R.D. 364, 369 (D. Md. 1994). Defendants failed to notify this Court or Plaintiffs of their intent to seek sanctions at the earliest possible date.

Defendants did not state in either their Answer to the initial or Amended Complaints that they were invoking 15 U.S.C. §§ 1681n(c) or 1681o(b). Defendants took no action regarding sanctions when Plaintiffs filed their Motion for Partial Summary Judgment. Defendants did nothing to alert Plaintiffs or this Court of their intention to seek sanctions when Plaintiffs pursued recusal. Defendants stood silent regarding sanctions when Plaintiffs filed an Opposition to Defendants' Cross-Motion for Summary Judgment. Instead, they waited until 14 days after the case was concluded to raise the issue of sanctions.

A case addressing the 21 day safe harbor provision is currently before the 4th Circuit. *Brickwood Contractors, Inc. v. Datanet Engineering, Inc.*, Nos. 00-2324 and 00-2325. Defendants' failure to provide Plaintiffs with proper notice and an opportunity to withdraw the purportedly sanctionable pleadings is potentially impacted by this pending Fourth Circuit decision. In *Brickwood Contractors, Inc.*, the Fourth Circuit is considering whether the failure to comply with Fed. R. Civ. P. 11 (c)(1)(A)'s safe harbor provision forecloses a party's ability to seek sanctions.

An opinion originally issued in the *Brickwood Contractors* appeal[6] found that failure to abide by the 21-day safe harbor provision of Rule 11 prevented consideration of sanctions. This opinion was vacated on July 30, 2003 for rehearing *en banc*. The Fourth

---

[6]    335 F.3d 293 (4th Cir. 2003)

17

Circuit heard oral argument in the *en banc* rehearing on October 28, 2003. If the Fourth

Circuit determines *en banc* that failure to abide by the safe harbor provision forecloses

sanctions, then Defendants' instant Motion for Attorney's Fees may no longer be viable.

*See Northlake Marketing & Supply, Inc. v. Glaverbel, S.A.*, 194 F.R.D. 633, 636 (N.D. Ill.

2000). This Court should thus await the issuance of a decision in *Brickwood Contractors*

before awarding sanctions under Rule 11 here.

Defendants' attempt to evade the consequences of a failure to abide by the 21-day

safe harbor provision under Fed. R. Civ. P. 11 by simply raising every single conceivable

basis for sanctions should be rejected. Where, as here, the purportedly objectionable

conduct is governed by Rule 11, a litigant must comply with Rule 11. *Hamil v. Mobex

Managed Services Co.*, 208 F.R.D. 247, 251 (N.D. Ind. 2002).

### 4.    Defendants' requested fees exceed recoverable amounts.

Due process requires that a party opposing a request for attorney's fees have an

opportunity to contest the amount of the sanction imposed. *In re Kunstler v. Britt*, 914

F.2d 505, 522 (4th Cir. 1990). The amount of fees sought by Defendants has varied.

When they filed their Motion for Attorney's Fees, Defendants represented that the

amount they sought was "in the approximate amount of $60,000 - $70,000." *See*

Defendants' Motion at page 4. Defendants now claim they are entitled to $85,708.00.

*See* Defendants' Memorandum at page 3.

### a.  Defendants provide no verification for requested fees, adequate time entries or evidence of appropriate hourly rates.

Defendants have failed to provide the court with proper verification of the fees

they seek. No contemporaneous time entry records were provided in support of the fee

request. No detailed invoices to Defendants from their counsel were provided. No

18

affidavits were provided to support the number of hours expended or the hourly rate

Defendants claimed and no evidence was submitted of the prevailing market rates for

attorneys conducting consumer law defense. Instead, Defendants provide two

spreadsheets in block billing format. *See* Exhibits 1 and 2 to Defendants' Memorandum.

These exhibits do not satisfy the requirements for documenting an attorney's fees request.

The spreadsheets offered by Defendants as Exhibits 1 and 2 of Defendants'

Memorandum are deficient for three reasons.

First, they are unsworn and unverified. None of the time asserted on behalf of

four attorneys or the one paralegal is accompanied by a declaration of the attorney or the

paralegal that the time claimed is a true and accurate representation derived from

contemporaneous billing records; or even an accurate estimate of the value of the services

rendered. Requests for attorney's fees must be accompanied by affidavits from the

attorneys establishing that the time for which fees are requested is derived from

contemporaneous billing records. *See, e.g., United States v. Pastor Medical Associates*

*P.C.*, 224 F.Supp.2d 342, 347-48 (D. Mass. 2002).

"A fee applicant has the burden of proving hours to the district court by

submitting contemporaneous time records that reveal all hours for which compensation is

requested and how those hours were allotted to specific tasks." *Costar Group, Inc. v.*

*Loopnet*, 106 F.Supp.2d 780, 788 (D. Md. 2000) (citations omitted). *See also Evans v.*

*Port Authority of New York*, 273 F.3d 346, 361 (3rd Cir. 2001) (fairly definite information

required); *Gay Officers Action League Puerto Rico*, 247 F.3d 288, 297 (1st Cir. 2001)

(parties who intend to seek fees must ensure that contemporaneous records are kept in

reasonable detail); *United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219,

1233 (10th Cir. 2000) (the party must submit meticulous, contemporaneous time records that reveal for each lawyer for whom fees are sought how hours were allotted to specific tasks);

Each of the four attorneys for whom Defendants claim attorney's fees, and the one paralegal, must submit affidavits verifying the time claimed by Defendants. Any timekeeper for whom there is no affidavit should not have his or her time considered by this Court. Only the individual timekeeper has personal knowledge of the hours he or she actually worked.

Second, the spreadsheets provided by defendants do not provide detailed information as to how the time was allotted to specific tasks. Instead, generalized descriptions covering broad categories were employed.

This practice has been referred to in case authority as "block billing." "'Block billing' refers to the time-keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks." *Harolds Stores, Inc. v. Dillard Department Stores, Inc.*, 82 F.3d 1533, 1554 at n.15 (10th Cir. 1996). "Block billing is inappropriate and prevents both opposing counsel and the Court from assessing the reasonableness of the time expended on certain tasks." *Boim v. Quaranic Literacy Institute*, 2003 WL 1956132 at *7 (N.D. Ill. 2003). Where, as here, the party claiming fees relies upon block billing, all such block-billed entries should be subtracted from the fee award. *See, e.g., Bennett v. Smith*, 2002 WL 169323 at *5 (N.D. Ill. 2002) ("Since the time entries were billed as block time, the Court cannot determine whether the time billed was reasonable. Accordingly, the entire time entries billed as block time will be subtracted from the fee award.")

20

The absence of specificity is particularly evident for the associates for whom large blocks of time are claimed on a single day.[7] Defendants claim 11.5 hours ($1,955) for Jennifer Speargas on 6/3/2002 for "Research/revise outline for motion for summary judgment" and 11.5 hours ($1,955) for Ms. Speargas on 6/6/2002 for "Research/draft memorandum for summary judgment." *See* Exhibit 1 to Defendants' Memorandum at page 2. Defendants assert 13.5 hours ($2,295) for Ms. Speargas for "Research/revise/cites for motion for summary judgment" on 9/16/2002. *See* Exhibit 1 to Defendants' Memorandum at page 4. Six and eight-word explanations for 13.5 and 11.5-hour entries are unacceptable. The entries lack the required degree of specificity for the Court to make any meaningful evaluation of the time claimed.

Defendants allege 15.3 hours ($3,366) for David Ralph on 9/16/2002 for "Review, revise and finalize motion and memorandum for summary judgment." *See* Exhibit 2 to Defendants' Memorandum at page 5. Defendants then claim for Mr. Ralph, on the very same day, an additional 0.4 hours ($88) for "Draft correspondence to Clerk re: same" and 1.8 hours ($396) for "Review and revise appendix and authorities." *Id.* This 17.5 hours claimed for Mr. Ralph in one day is neither adequately accounted for nor realistic.[8]

Partner billing in this matter is also vague and too generalized in at least one instance. Defendants claim $3,355 for a 12.2-hour entry by partner Ava Lias-Booker on 9/16/2002. *See* Exhibit 1 to Defendants' Memorandum at page 5. The description of

---

[7]     Claims of large blocks of time such as these require adequate documentation in fee requests. *Jane L. v. Bangerter*, 61 F.3d 1505, 1510 (10th Cir. 1995).

[8]     "The court should question reported time significantly in excess of the norm." *Ramos v. Lamm*, 713 F.2d 546, 554 (10th Cir. 1983), overruled on other grounds, *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 483 U.S. 711, 725, 107 S.Ct. 3078 (1987).

what was done over this entire day was "Draft and finalize 'user' arguments; conference with staff re: filing issues and drafting new introduction." *Id.* This description does not begin to provide the necessary level of detail for 12.2 hours of time.

A court may reduce the number of hours awarded if the documentation of attorney's fees is vague or incomplete. *Costar Group, Inc. v. Loopnet, supra*, 106 F. Supp.2d at 788 (citations omitted). *See also Gay Officers Action League Puerto Rico, supra*, 247 F.3d at 127 (failure to ensure reasonable detail in contemporaneous records may result in the slashing or disallowance of an award); *Harper v. City of Chicago Heights*, 223 F.3d 593, 606 (7th Cir. 2000), *cert. denied*, 531 U.S. 1127, 121 S.Ct. 883 (2001) (court may either strike or reduce problematic entries); *Case v. Unified School District No. 233, Johnson County, Kansas*, 157 F.3d 1243, 1250 (10th Cir. 1998) (district court is justified in reducing hours if the records are imprecise and fail to document adequately utilization of large blocks of time).

Defendants' time should be reduced because Defendants engaged in "block billing." In addition, based upon the absence of detailed, contemporaneous time records, Plaintiffs request that Defendants' time be reduced an additional 40% for any timekeeper who ultimately provides sworn verifications of his or her hours worked.[9] This reduction is necessary to compensate for the broad generalizations relied upon by Defendants and avoids the tedious burden of an hour-by-hour analysis by this Court.

Third, Defendants' fee request is devoid of any argument or evidence of the prevailing market rate in Baltimore for attorneys defending consumer law claims. It is

_____

[9] If no verification is provided, no fees should be awarded at all.

the burden of the fee applicant to present evidence that the requested fees are in line with the prevailing market rate for similar services. *Costar Group, Inc. v. Loopnet*, 106 F. Supp.2d at 787-88. Evidence of the prevailing market rate usually takes the form of affidavits. *Id. See also Evans v. Port Authority of New York*, *supra*, 273 F.3d at 360-61 (fee applicant bears the burden of documenting the applicable hourly rate); *United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, *supra*, 205 F.3d at 1234 (focus must be on prevailing market rate).

Defendants assert that their fees are "inherently reasonable" because they seek fees at the rates set forth in Appendix B of the Local Rules, which are less than their counsel's "customary fees." *See* Defendants' Memorandum at page 20. Defendants presuppose, without evidence, that both counsel's customary fee and the fee set forth in Appendix B are related to the market rate for attorneys in Baltimore defending the subject matter of the case at bar. There is no evidence in the record, however, to suggest that either counsel's customary fee or the fees in Appendix B bear any relation to the market rate in this District of attorneys engaged in defense of consumer law claims. It is Defendants' burden to adequately establish the market rate. They have not done so here.

Most importantly, there is a material ambiguity between counsel's customary fees claimed by Defendants' counsel and the rates that the Defendants actually paid. The retainer letter between Defendants and their counsel reflects a different hourly rate than that contained in Defendants' Memorandum and also includes a substantial discount that Defendants never brought to this Court's attention in Defendants' Memorandum. *See* Exhibit 6.

**b. The fees requested exceed the minimum amount necessary to deter.**

Fed. R. Civ. P. 11 (c)(2) provides that "[a] sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct... ." *See also Brubaker v. City of Richmond*, 943 F.2d 1363, 1374 (4th Cir. 1991) (the amount of sanctions under should reflect the purpose of rule - deterrence of future litigation abuse; accordingly, a district court should expressly consider, *inter alia*, the reasonableness of the opposing party's fees and the minimum necessary to deter).

This limiting principal on the size of sanctions is universally recognized. *See, e.g.*, *Vavarro-Ayala v. Nunez*, 968 F.2d 1421, (1st Cir. 1992); *Mercury Air Group, Inc. v. Mansour*, 237 F.3d 542, 548 (5th Cir. 2001) (court must impose least severe sanction); *White v. General Motors Corporation, Inc.*, 908 F.2d 675, 684 (10th Cir. 1990) ("The appropriate sanction should be the least severe sanction adequate to deter and punish ... ."); *Jackson v. The Law Firm of O'Hara, Ruberg, Osborne and Taylor*, 875 F.2d 1224, 1229 (6th Cir. 1989) (because deterrence, not compensation, is the principal goal of Rule 11, the court should impose the least severe sanction that is likely to deter); *Doering v. Union County Board of Chosen Freeholders*, 857 F.2d 191, 1954 (3rd Cir. 1988). The amount sought by Defendants is not the least severe sanction necessary to deter, it is an attempt at wholesale cost-shifting. This is inconsistent with the policy purposes for the imposition of sanctions.

Actual expenses and attorney's fees are not necessarily a reasonable sanction. *Fahrenz v. Meadow Farm Partnership*, 850 F.2d 207, 211 (4th Cir. 1988); *Childs v. State Farm Mutual Automobile Insurance Co.*, 29 F.3d 1018, 1027 (5th Cir. 1994). District courts must demonstrate that sanctions are not vindictive or overly harsh reactions to

objectionable conduct, and that the amount and type of sanction was necessary to carry out the purpose of the sanctioning provision. *Topalian v. Ehrman*, 3 F.3d 931, 937 (5th Cir. 1993). The $85,708 sought by Defendants is both vindictive and overly harsh.

### c. Defendants failed to mitigate time spent.

Even the defendant in a frivolous suit[10] is charged with a duty to mitigate, using reasonable means to terminate the litigation and prevent the cost of that suit from being excessive. *Napier v. Thirty or More Unidentified Federal Agents, Employees or Officers*, 855 F.2d 1080, 1092 (3rd Cir. 1988) (citations omitted); *White v. General Motors Corp.*, 908 F.2d 675, 684 (10th Cir. 1990). A cursory analysis of the unsworn, summary billing data provided by Defendants demonstrates that Defendants are claiming payments for unreasonable uses of time.

   Defendants' own claim sheets show they seek payment for what is, in essence, the same work done by multiple attorneys. The Defendants bill too much time for the tasks outlined in their bills. Defendants allege 14.5 hours ($2,465) for Ms. Speargas to draft the letter objection to Plaintiffs Motion to Recuse from August 12-16, 2002. *See* Exhibit 2 to Defendants' Memorandum at page 1. Defendants then seek 23.8 hours ($5236) for work purportedly done by Mr. Ralph on August 27-29 and September 4-6, 2002 in drafting an Opposition to the Objections to the magistrate judge's ruling on recusal. *Id.* at pp.1-2. A review of the pleadings demonstrates that Defendants' Opposition to the Objections represents in essence a reorganization of Defendants' initial

---

[10]      As set forth above, the case at bar was not frivolous.

Opposition to Plaintiffs' Motion to Recuse. Defendants are not entitled to receive more than the costs of the original pleading plus the minimal costs of reorganizing the same pleading into a new document.

The party requesting attorney's fees must make a good faith effort to exclude from the fee request hours that are excessive, redundant or otherwise unnecessary. *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933 (1983). Defendants' unverified claims demonstrate a failure to exclude unnecessary hours. All of these unnecessary hours should be rejected by this Court in any award of fees.

The unsworn spreadsheets also reflect an attempt by Defendants to receive payment for the routine legal background work of counsel. In an entry dated 6/27/2002, Ms. Speargas claims 6 hours ($1,020) for "Research re: direct corporate liability." *See* Exhibit 1 to Defendants' Memorandum at page 3. In an entry dated 6/28/2002, Ms. Speargas then claims another 6 hours ($1,020) for "Draft memo re: direct corporate liability. *Id*. In an entry dated 8/12/2002, Ms. Speargas claims 7.5 hours ($1,275) for "Research re: recusal." *See* Exhibit 2, page 1.

It is unreasonable to attempt to shift fees to an adversary for time incurred conducting background research since such an expenditure of time should be absorbed into a law firm's overhead. *Case v. Unified School District No. 233, Johnson County, Kansas, supra*, 157 F.3d at 1253. The sums claimed by Defendants for this background work ($3315) should be rejected.

**5.    Counsel is solely liable for any sanctions.**

Undersigned counsel is solely responsible and assumes full responsibility (to the limit of his ability to pay) for any sanctions awarded by this Court in connection with this

litigation. Courts disfavor sanctioning a party for counsel's misconduct,[11] unless the party is somehow implicated. *Shepherd v. American Broadcasting Companies, Inc.*, 62 F.3d 1469, 1484 (D.C. Cir. 1995). The decisions to file a summary judgment motion, seek recusal of Magistrate Judge Grimm and oppose Defendants' Summary Judgment Motion, the bases for which Defendants seek sanctions, were legal decisions made by undersigned counsel. *See* Exhibit 6, ¶¶ 5-7.

Defendants have presented no argument or evidence that any individual Plaintiff directed the course of conduct for which Defendants seek sanctions. Defendants cannot impose joint and several liability for sanctions on Plaintiffs and their attorney because it may facilitate ease of collection or maximizes the probability of recovery. In the absence of any showing of misconduct by the Plaintiffs, sanctions are only available against Mr. Sweetland.

### a. The law of the case is that counsel alone is liable for sanctions.

This Court previously ruled that counsel alone is responsible for sanctions in this case. *See Ausherman v. Bank of America Corp.*, 212 F.Supp.2d at 445, n.11 (D. Md. 2002). This ruling constitutes the law of the case. Under the law of the case doctrine when the court decides a rule of law that decision should govern the same issues in subsequent stages in the same case. *Arizona v. California*, 460 U.S. 605, 618, 103 S.Ct. 1382 (1983), *rehearing denied*, 462 U.S. 1146, 103 S.Ct. 3131 (1983). "The doctrine applies in a situation where a court will not reconsider its own decision rendered at an earlier stage of the litigation absent clear and convincing reasons to reexamine the prior ruling." *Major v. CSX Transportation*, 278 F. Supp.2d 597, 615 (D. Md. 2003) (citations omitted).

---

[11]    Plaintiffs deny that any misconduct occurred in the prosecution of the instant action.

**b. Sanctions are unavailable against the Plaintiffs, individually or collectively, as a matter of law under the four theories articulated by Defendants.**

(1)   **Fed. R. Civ. P. 11.**

Sanctions are not available under Fed. R. Civ. P. 11 against parties where, as here, they have has acted on advice of their attorneys and have not participated in any significant, active way in the lawsuit. *Bakker v. Grutman*, 942 F.2d 236, 242 (4th Cir. 1991). A client cannot be held liable for Rule 11 sanctions unless he or she had actual knowledge that the filing paper constituted wrongful conduct. *Cross & Cross Properties, Ltd. v. Everett Allied Co.*, 886 F.2d 497, 505 (2d Cir. 1989). Defendants have not even attempted to show that the Plaintiffs had any actual knowledge of the filing of any allegedly sanctionable pleading.

Further, Fed. R. Civ. P. 11 (c)(2) a provides that monetary sanctions may not be imposed on a represented party, such as Plaintiffs in the case at bar, for making claims and legal contentions that are not warranted by existing law or by a nonfrivolous argument for extension or modification of existing law. *See also Byrne v. Nezhat*, 261 F.3d 1075, 1118 (11th Cir. 2001) (Rule 11 does not permit the sanctioning of a client when the basis for the sanction is that the pleading filed by the attorney was legally frivolous.).

This prohibition on sanctioning clients for the legal positions taken by their attorneys is universally recognized. *See, e.g., Schrag v. Simpson*, 141 F.3d 1185 (10th Cir. 1998) (unpublished table decision) (stating "such legal matters as the frivolousness of a claim or the impropriety of a discovery request, which are 'peculiarly [within] the province of lawyers,' would not, without specific findings implicating knowing

28

participation, support Rule 11 sanctions against a party."); *Baker v. Alderman*, 158 F.3d

516, 526 (11th Cir. 1998) (a district court abuses its discretion by imposing sanctions on a

plaintiff and his attorney absent findings that the plaintiff and the attorney violated Rule

11); *Borowski v. DePuy, Inc.*, 850 F.2d 297, 305 (7th Cir. 1988) (plaintiff should not be

sanctioned for counsel's choice of legal arguments advanced on client's behalf). There is

thus no basis in law to impose sanctions against the Plaintiffs under Rule 11.

**(2)    28 U.S.C. § 1927.**

Sanctions under 28 U.S.C. § 1927, another of the four theories of sanctions

explicitly sought by Defendants, are not even available against parties. Sanctions under

§ 1927 are *only* available against the attorney. *Proctor & Gamble Co. v. Amway Corp.*,

280 F.3d 519, 525 (5th Cir. 2002); *Byrne v. Nezhat, supra*, 261 F.3d at 1106; *Salovaara v.

Eckert*, 222 F.3d 19, 35 (2d Cir. 2000); *Kansas Public Employees Retirement System v.

Reimer & Kroger Assoc.*, 165 F.3d 627, 630 (8th Cir. 1999); *United States v.

International Brotherhood of Teamsters,* 948 F.2d 1338, 1345 (2d Cir. 1994).

Defendants apparently seek sanctions against Plaintiffs under § 1927. As a matter of law,

however, such sanctions are only available against Mr. Sweetland.

**(3)    The Court's inherent authority**.

Sanctions under the Court's inherent authority, a third basis upon which

Defendants relied for sanctions, may not be imposed on a party, unless there is a finding

that the party, rather than the attorney, acted in bad faith. *See Robinson v. Richie*, 646

F.2d 147, 148-49 (4th Cir. 1981). Defendants have identified no act or omission

attributable to any individual Plaintiff, or to the Plaintiffs collectively, warranting an

imposition of sanctions upon Plaintiffs rather than their counsel. There is no evidence in

29

the record to suggest that Plaintiffs made any decision or engaged in any misconduct whatsoever, let alone conduct rising to the level of bad faith. The actions complained of by Defendants relate solely to legal decisions made by Mr. Sweetland.

The Supreme Court has cautioned that because of the "very potency" of a court's inherent power, it should be exercised "with restraint and discretion*.*" *Chambers v. NASCO, Inc.*, 501 U.S. 32, 111 S.Ct. 2123, 2132 (1991), *rehearing denied*, 501 U.S. 1269, 112 S.Ct. 12 (1991). Before attorney fees can be awarded based under the court's inherent authority based upon an allegation that litigation was conducted in bad faith, a high degree of specificity in factual findings is required*. Bridgestone/Firestone, Inc. v. Recovery Credit Services, Inc.*, 98 F.3d 13, 21 (2d Cir. 1996). This requirement for a high degree of specificity in factual findings presupposes a degree of showing of bad faith that Defendants have not made, and cannot make, as to any of the individual Plaintiffs.

(4)    <b>15 U.S.C. §§ 1681n(c) and 1681o(b).</b>

Defendants also sought sanctions under 15 U.S.C. §§ 1681n(c) and 1681o(b). There is no reason to believe that a party should be held liable under these provisions of the Fair Credit Reporting Act, absent a showing that the party, rather than counsel, was responsible for any bad faith conduct. In general, sanctioning a party requires that the party was aware of wrongdoing, *See White v. General Motors Corp.*, *supra*, 908 F.2d at 686-87. Alternatively, the party seeking sanctions must show that the party, as opposed to their counsel, was responsible for the conduct. *See Tenkku v. Normandy Bank*, 348 F.3d 737, 744 (8th Cir. 2003). Defendants have neither offered evidence nor made any

argument that the individual Plaintiffs played any role in any of the courses of action for which attorney's fees are sought.

> **c.  Defendants do not identify against which Plaintiffs sanctions are sought.**

There were originally 28 Plaintiffs in this case.  Some of these were voluntarily dismissed at the inception of the case when Plaintiffs filed their Amended Complaint. More were involuntarily dismissed later.  By the time Defendants filed their Cross-Motion for Summary Judgment only 18 of the original 28 Plaintiffs remained. Defendants do not specify against which Plaintiffs, if any, sanctions are sought.  Not all the Plaintiffs were even parties at the time of the filing of the purportedly sanctionable pleadings.

> **6.     Defendants' requested sanctions exceed Counsel's ability to pay.**

In *In re Kunstler*, 914 F.2d 505, 524 (4th Cir. 1990), the U.S. Court of Appeals for the Fourth Circuit held that "a monetary sanction imposed without any consideration of ability to pay would constitute an abuse of discretion." The policy of deterring frivolous suits is not served by forcing misguided people into financial ruin simply for prosecuting a groundless case.  *DeBauche v. Trani*, 191 F.3d 499, 511 (4th Cir. 1999), *cert. denied*, 529 U.S. 1033, 120 S.Ct. 1451 (2000).  As evidenced by the Accompanying Affidavit of Counsel, the monetary sanctions sought by Defendants far exceed counsel's ability to pay.

The Fourth Circuit's decision in *In re Kunstler*, requiring a district court to consider the sanctioned individual's ability to pay is in accord with the overwhelming majority of Circuits having considered the issue.  *See, e.g.*, *Martin v. Automobili Lamborghini Exclusive, Inc.*, 307 F.3d 1332, 1337 (11th Cir. 2002); *Baker v. Alderman*,

158 F.3d at 529 (9th Cir. 1998); *White v. General Motors Corporation, Inc.*, 908 F.2d

675, 684 (10th Cir. 1990); *Jones v. Pittsburgh National Corporation*, 899 F.2d 1350, 1359

(3rd Cir. 1990); *Jackson v. The Law Firm of O'Hara, Ruberg, Osborne and Taylor*, 875

F.2d 1224, 1230 (6th Cir. 1989). This unequivocal body of authority establishes the

existence of a limitation on the size of any monetary sanction.

   The Fourth Circuit counseled in *In re Kuntsler* that "[a] court should refrain from

imposing a monetary award so great that it will bankrupt the offending parties or force

them from the practice of law." 914 F.2d at 524. *See also Estate of Calloway v. Marvel

Entertainment Group*, 9 F.3d 237, 241 (2d Cir. 1993), *cert. denied*, 511 U.S. 108, 114

S.Ct. 1829 (1994) (sanctions in excess of attorney's net worth serve no useful purpose);

*White v. General Motors Corporation, Inc.*, 908 F.2d at 684 ("It is particularly

inappropriate to use sanctions as a means of driving certain attorneys out of practice.");

*Doering v. Union County Board of Chosen Freeholders*, 857 F.2d 191, 196 (3rd Cir.

1988) ("[C]ourts must be careful not to impose monetary sanctions so great that they are

punitive - or that might even drive the sanctioned party out of practice."). It is clear from

the accompanying Affidavit of Counsel that imposition of significant sanctions here

would result in Mr. Sweetland's bankruptcy. *See* Exhibit 6 at ¶10.

   Case law in this and every other Circuit, however, demonstrates that sanctions

that may bankrupt an individual are impermissible. Sanctions are not a fee-shifting

mechanism and do not create an entitlement in adverse parties to compensatory damages

or attorneys' fees without regard to ability to pay. *Cooter & Gell v. Hartmax Corp.*, 496

U.S. 384, 409, 110 S.Ct. 2447, 2462 (1990). Plaintiffs' and their Counsel's financial

status must be considered. Their relative financial status cannot form the basis for a

decision to shift the burden of paying the fees to an otherwise innocent Plaintiff who may have the ability to pay.

Defendants seek to hold Plaintiffs and their counsel jointly liable for any sanctions awarded by this Court. As set forth above, there is no basis in law or fact for the imposition of sanctions against the Plaintiffs. In the event this Court does impose a monetary award against Plaintiffs, it must consider each and every one of their individual ability to pay. It is reversible error to impose sanctions jointly without evidence that each individual who is jointly liable for the award of sanctions is able to pay that award. *DeBauche v. Trani*, 191 F.3d at 511 (4th Cir. 1999); *Martin v. Automobili Lamborghini Exclusive, Inc.*, 307 F.3d 1332, 1337 (11th Cir. 2002); *Enercon GMBH v. Erdman*, 13 Fed. App. 651 at *2 (9th Cir. 2001); *Sassower v. Field*, 973 F.2d 75, 81 (2d Cir. 1992), *cert. denied*, 507 U.S. 1043, 113 S.Ct. 1879 (1993). A court may not simply aggregate the resources of sanctioned parties and make a determination that they may collectively pay the sanction. *Martin v. Automobili Lamborghini Exclusive, Inc.*, 307 F.3d at 1337.

The relative wealth of the parties should also be considered in determining any imposition of costs under 15 U.S.C. §§ 1681n(c) or 1681o(b). While the relative wealth of the parties is not a consideration under Fed. R. Civ. P. 11, 28 U.S.C. § 1927 or the Court's inherent authority, it is a consideration in analogous fee-shifting statutes. *See, e.g., Arnold v. Burger King Corp.*, 719 F.2d 63, 67 (4th Cir. 1983), *cert. denied*, 469 U.S. 826, 105 S.Ct. 108 (1984). The fee-shifting provisions of the Fair Credit Reporting Act should be interpreted in a similar fashion. The fact that Defendants are components of the largest financial services company in the world should be a factor in any fees they may receive under the Fair Credit Reporting Act.

33

**7.     Counsel is already being punished for conduct at issue.**

The massive monetary sanctions sought by Defendants are an attempt at punishing the same purported misconduct twice. Defendants argued here that the pendency of disciplinary charges in this Court against Mr. Sweetland is evidence supporting a need to punish undersigned counsel with the imposition of attorney's fees. *See* Defendants' Memorandum at page 4, n.5 and page 14.

A district court must take into account equitable considerations when considering monetary sanctions, including adverse press scrutiny to which the sanctioned party had already been subject, and disciplinary proceedings involving the sanctioned attorney. *Doering v. Union Board of Chosen Freeholders*, 857 F.2d at 197-98. In the sanctions consideration at issue, undersigned counsel has been overwhelmingly deterred. First, he is subject to a disciplinary proceeding in which he has incurred thousands of dollars in legal bills to defend himself.

Second, the existence of the disciplinary proceeding is and always will be public because the magistrate who made the referral issued an extensive published decision including the referral. *Ausherman v. Bank of America Corp.*, 212 F.Supp.2d 435 (D. Md. 2002). This referral was reported in the press. *See, e.g.*, Exhibit 7. Indeed, this case is also being used in Continuing Legal Education programs on Ethics which is distributed over the Internet. *See* Exhibit 8.

"It is also appropriate for the district court to review any other evidence that would tend to substantiate [the attorney's] claim that he has already been deterred sufficiently from filing frivolous actions." *Doering*, 857 F.2d at 197. As is set forth in

the accompanying materials detailing undersigned counsel's ability to pay, the personal and professional consequences of the public disciplinary referral have been devastating.

The appropriate means for "driving certain attorneys out of practice" is disciplinary hearings. *White v. General Motors Corporation, Inc.*, 908 F.2d at 684. "Such decisions are properly made by those charged with handling attorney disbarment and are generally accompanied by specific due process protections to protect the rights of the attorney in question." *Id.* "Other proceedings such as disbarment exist to weed out incompetent lawyers. Rule 11 was not enacted for this purpose, but rather to provide deterrence for abuses of the system of litigation in federal district courts." *Doering,* 857 F.2d at 197.

### 8.     An oral hearing is requested.

Plaintiffs further request an evidentiary hearing on Defendants' Motion for Attorney's Fees pursuant to the Due Process Clause of the Fifth Amendment and Local Rule 105.6. "[A]ttorney's fees certainly should not be assessed lightly or without fair notice *and an opportunity for a hearing on the record*." *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 766-67, 100 S.Ct. 2455, 2464 (1980) (emphasis added). A court may sanction a counsel or litigant for bad-faith conduct only "[a]s long as [he] receives an appropriate hearing." *Chambers v. NASCO, Inc.*, 501 U.S. at 57.

Where, as here, there are issues of credibility, disputed questions of fact and rational explanations of the purpose given in proceeding on a motion for sanctions an evidentiary hearing may be necessary, especially where large sanctions are being considered. *In re Kuntsler*, 914 F.2d 505, 520 (4th Cir. 1990). In *Hathcock v. Navistar,* 53 F.3d 36, 40 (4th Cir. 1995), the U.S. Court of Appeals for the Fourth Circuit found that

failure to afford an attorney a hearing before imposing sanctions constituted a deprivation of rights under the Fifth Amendment's Due Process Clause.

An evidentiary hearing is required, *inter alia*, because Defendants have not provided a verified record of the time spent by their counsel, contemporaneous billing records or any evidence or argument of the market rate for attorneys defending consumer law cases in this region.  Plaintiffs require an oral argument because they were not informed, pursuant to Local Rule 105.8.b, of the Court's intention to consider sanctions under Fed. R. Civ. P. 11 or 28 U.S.C. §1927.

Plaintiffs request a hearing because there is the possibility this Court will be imposing sanctions under its inherent authority.  In sanctioning an attorney pursuant to its inherent authority, a district court must provide the attorney with specific notice of the conduct alleged to be sanctionable and the standard by which that conduct will be assessed, and an opportunity to be heard on the matter.  *United States v. Seltzer*, 227 F.3d 36, 42 (2d Cir. 2000); *Oregon RSA No. 6, Inc. v. Castle Rock Cellular of Oregon, L.P.*, 76 F.3d 1003, 1007-08 (9th Cir. 1996).  An evidentiary hearing and oral argument are also required because sanctions under 28 U.S.C. §1927 are at issue.  Sanctions under 28 U.S.C. § 1927 are penal in nature.  *Browning v. Kramer*, 931 F.2d 340, 344 (5th Cir. 1991).  Where, as here, the sanctions under consideration are penal in nature, there is a heightened requirement for due process protections.  *Mackler v. Cohen*, 225 F.3d 136, 142 (2d Cir. 2000).

Three factors normally determine whether an individual has received the process that the Constitution finds due:  1) a private interest that will be affected by official action; 2) the risk of erroneous deprivation of such interest through the procedures used,

36

and probable value, if any, of additional or substitute procedural safeguards; and, 3) the government's interest, including the function involved and fiscal and administrative burdens, that the additional or substitute procedural requirements would entail. *City of Los Angeles v. David*, 538 U.S. 715,123 S.Ct. 1895, 1896 (2003). All of these factors militate in favor of an evidentiary hearing here.

First, there is a significant amount of money at stake in these proceedings. Second, there is a high degree of risk of an erroneous determination on Defendants' Motion for Attorneys' Fees. Defendants have offered no affidavits, billing records or other evidence of the fees they claim, and no evidence of the prevailing market rate for attorneys conducting defense of consumer law claims. Third, there is minimal additional burden to this Court by an evidentiary hearing.

## CONCLUSION

Wherefore, Plaintiffs (individually and collectively) and undersigned Mr. Sweetland respectfully request that Defendants' Motion for Attorneys' Fees be denied. In the alternative, Plaintiffs (individually and collectively) and undersigned Mr. Sweetland request that any monetary sanctions be imposed against Mr. Sweetland alone, and only in the amount that takes into account the minimum necessary to deter, counsel's ability to pay, other deterrents and the absence of specificity in Defendants' unverified and duplicative fee request. Plaintiffs and Mr. Sweetland respectfully request a hearing.

Respectfully submitted,



_____

Rodney R. Sweetland, III (Fed. Bar. No. 12707)
1200 Seventeenth Street, N.W., Fifth Floor
Washington, D.C. 20036
(202) 467-6300

For Plaintiffs and Individually

**CERTIFICATE OF SERVICE**

Pursuant to Fed. R. Civ. P. 5(b)(2)(D) and the Local Rules, I hereby certify that on this 22nd day of March, 2004, a true copy of the foregoing a copy of the foregoing Opposition to Defendants' Motion for Attorneys' Fees, Exhibits and Proposed Order were filed electronically.  Service of this filing to all parties, including those listed below, will be accomplished by operation of the Courts ECF system and Federal Express, and the parties may access this filing through the Court's system:

Ava Lias-Booker
Jennifer Speargas
Saul Ewing LLP
101 South Charles Street
Baltimore, MD 21201

Rodney R. Sweetland, III

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DISTRICT

EARLE E. AUSHERMAN, *et al.*          )
                                      )
            Plaintiffs,               )
                                      )
        v.                            )        Civil Action No. MJG 01-438
                                      )
BANK OF AMERICA CORPORATION, *et al.* )
                                      )
            Defendants.               )

## ORDER

Having read and considered Plaintiffs and Rodney R. Sweetland, III's Opposition to Defendants' Motion for Attorneys' Fees and the record herein, it is hereby this ___ day of _____, 2004,

**ORDERED** that Defendants' Motion for Attorneys' Fees be, and the same is hereby, **DENIED.**


                                    _____
                                    MARVIN J. GARBIS, JUDGE
                                    UNITED STATES DISTRICT COURT
                                    FOR THE DISTRICT OF MARYLAND