Antitrust & Trade Regulation Report - Attorney's FCRA Settlement Conduct    Page 1 of 3
Case 1:01-cv-00438-MJG    Document 245-3    Filed 03/22/2004    Page 1 of 3

[x] Previous Document   [x] Next Document   [x] Search   [x] Contents

**BNA, Inc.**

# Antitrust & Trade Regulation
## REPORT

Volume 83 Number 2070
Friday, August 16, 2002
ISSN 1523-2824

Page 156

## News

### Attorneys
### Attorney's FCRA Settlement Conduct
### Triggers Disciplinary Referral, Sanctions

An attorney's self-acknowledged lies in a settlement offer letter to the defendants in a Fair Credit Reporting Act case leads a magistrate sitting in the U.S. District Court for the District of Maryland to refer the matter to the court's disciplinary committee for an investigation and a determination of what, if any, action should be taken (*Ausherman v. Bank of America Corp.*, D. Md., No. MJG-01-CV-438, 7/23/02 ).

While Magistrate Judge Paul W. Grimm determines that the settlement conduct alone cannot support a sanction award pursuant to the court's inherent authority, he sanctions the attorney under Rule 37(b)(3) for failing to obey court orders requiring identification of the source of the factual basis of the complaint. The attorney's obstinacy necessitated his deposition, where the truth was made known.

The defendants sought counsel fees and costs of $14,855.25 as a sanction for their work on the motion and deposition. However, the magistrate finds the use of four attorneys on the matter to be excessive, and he awards only $8,649.25.

#### Underlying Claim

The complaint filed by attorney Rodney R. Sweetland, III, cited Bank of America Corp., a related entity called Bank of America Auto Finance, and two unknown individuals in connection with the alleged unauthorized procurement and dissemination of consumer reports on 25 individuals.

One of the individuals cited, John Doe Number 1, allegedly was an unidentified employee of the defendants. The other, John Doe Number 2, was named as an unidentified co-conspirator to whom the consumer reports were disseminated.

The defendants conducted an internal investigation of the allegations but were unable to identify any employee as John Doe Number 1. The defendants were no more successful in discovery. They learned that the plaintiffs had no knowledge of the facts underlying their claims until they received a letter from Mr. Sweetland advising them that the defendants had obtained their credit information and inviting participation in the suit.

Sweetland asserted the attorney-client privilege and the work product doctrine in response to interrogatories about the matter. The court rejected these assertions and ordered the discovery in a succession of court orders.

Finally, after an April 22, 2002 hearing, the court ordered Sweetland to answer interrogatories regarding the factual bases of plaintiffs' claims. Sweetland's continued refusal to answer led the court to order his deposition, which was to be presided over by the magistrate.

EXHIBIT 8

During the deposition, Sweetland revealed that he learned about the alleged improper conduct during an August 2000 meeting with a former client, who refused to reveal the names of the John Does because he "didn't want to get them involved."

The settlement letter, dated April 24, 2002, offered to reveal the identify of a John Doe Number 3, "the kingpin of the network," in return for a payment of $75,000 per plaintiff, for a total of $1.875 million. The letter indicated that Sweetland did not then know the identity of John Doe 3 and that he would not attempt to learn the identity while he was subject to court order. But the letter asserted that Sweetland had made "confidential arrangements" to "have that information provided to me once any possibility of my own deposition (or answering interrogatories) has passed."

During his deposition, Sweetland acknowledged that he was lying when he stated that he had made arrangements to find out the identity of John Doe Number 3. He also admitted that his former client would not provide the information.

The defendants viewed Sweetland's "self-acknowledged lie" as evidence of bad faith, warranting an award of monetary sanctions. Sweetland responded that any sanctions would be discretionary, not mandatory, and that statements in a confidential settlement letter are not a proper basis for sanctions because the letter stated it was sent "under aegis of Fed.R. Evid. 408 and without prejudice or effect for any other purpose."

## Analysis

Judge Grimm's sanction award against Sweetland is based on the discretionary authority of Rule 37(b)(3) and reflects his conduct with respect to the court's discovery orders.

Sweetland's statements in the settlement letter cannot be considered by the court in a sanction order, the magistrate rules, because there is "an insufficient causal nexus" between the statements and "the events that resulted" in the order for Sweetland's deposition.

However, the conduct warrants a disciplinary referral pursuant to ethical rule 4.1 on the process of negotiation, the magistrate rules. While puffery, intentional vagueness and the like are permissible, the authorities "draw the line at lying" during settlement negotiations about matters that are "material" to the negotiation.

The magistrate is skeptical of Sweetland's argument that his statements were "settlement bluster"; the matter should be determined by the disciplinary committee, not the court.

There is little doubt that the lie was material from the defendant's perspective, in the magistrate's view. The defendants claimed that they cannot locate any employee who may have disclosed the plaintiffs' credit information. They were being asked to pay more than $1.8 million for the identity of John Doe Number 3.

Even if the plaintiffs are correct in arguing in the identifies of the John Doe defendants are irrelevant to the liability question in this case, the magistrate observes, "it still would be of paramount importance to the Defendants to learn the identity of John Doe Number 3 so they could take action to end his/her activities and cut off any potential future liability."

The disciplinary referral is not limited to ethical rule 4.1, the court notes. The committee also should consider rule 8.4(c), which states that it is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit, or misrepresentation. The magistrate also rules that Sweetland is "woefully" misinformed about the scope of Evid. Rule 408 and "the limited extent to which it is intended to shield from use statements offered in an effort to compromise disputed claims." The rule does not shield lies about material facts. The rule must be interpreted under Evid. Rule 102 to obtain a fair and just result. The court will not allow "a rule intended to promote the fair resolution of disputes to be perverted by a use that would undermine the very reason for its existence." In calculating the sanction, the magistrate

declines to compensate two of the four attorneys who worked on the motion and deposition; he cuts the hours of the remaining two attorneys. He allows full paralegal time and full costs of $992.25.

End of article graphic

Contact customer relations at: customercare@bna.com or 1-800-372-1033
ISSN 1523-2824
Copyright © 2002, The Bureau of National Affairs, Inc.
Copyright FAQs | Internet Privacy Policy | BNA Accessibility Statement | License

Reproduction or redistribution, in whole or in part, and in any form, without express written permission, is prohibited except as permitted by the BNA Copyright Policy,
http://www.bna.com/corp/index.html#V

Previous Document    Next Document    Search    Contents