UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND
(Northern Division)

| | |
|---|---|
| EARLE AUSHERMAN, et al. | ) |
| Plaintiffs, | ) ) ) |
| v. | ) Civil Action No. MJG-01-438 |
| BANK OF AMERICA, et al. | ) ) ) |
| Defendants. | ) ) |

**SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANTS' MOTION FOR ATTORNEYS' FEES**

**INTRODUCTION**

Rodney R. Sweetland, III, by his counsel, Peter F. Axelrad and Pamela A. Bresnahan, and Plaintiffs, by their counsel Rodney R. Sweetland, III, hereby submit this Supplemental Memorandum in Opposition to Defendants' Motion for Attorneys' fees. This Supplemental Memorandum is based upon this Court's Order of May 3, 2004, testimony adduced in the disciplinary matter and a recent *en banc* decision by the Fourth Circuit.

In *Brickwood Contractors, Inc. v. Datanet Engineering, Inc.*, 369 F.3d 385 (4th Cir. 2004) (*en banc*), the Fourth Circuit held that a party cannot seek sanctions under Fed. R. Civ. P. 11 after summary judgment has been granted. *Id.* at 389. This May 26, 2004, decision is important to the resolution of the Motion *sub judice* because it streamlines the legal standards for the imposition of sanctions.

1

Defendants sought sanctions under Rule 11, 28 U.S.C. § 1927, 15 U.S.C. §§ 1681n and o and this Court's inherent authority. *See* Defendants' April 1, 2003, Motion for Attorney's Fees at pp. 1, 4. The effect of the decision in *Brickwood Contractors* is to eliminate Rule 11 as a basis for sanctions here. This is important because the remaining sanctions provisions require, at a minimum, a showing of bad faith. Testimony of Michael Moore, a witness never deposed in this case, that was adduced during the April 2, 2004, disciplinary hearing, demonstrates the absence of any bad faith.

1. **The April 2, 2004, Testimony Of Moore Confirms Bona Fide Settlement Offer, Legitimate Basis of Claims And Absence Of Bad Faith.**

Plaintiffs and counsel submitted an Affidavit from their source for information related to the underlying claims, Michael Moore, with their March 22, 2004 Opposition. *See* Plaintiffs' Opposition to Motion for Attorneys' Fees, Exhibit 3. On April 2, 2004, Mr. Moore provided testimony that expanded upon his Affidavit. This represents the first time Mr. Moore provided oral testimony related to the underlying claims.[1]

There appear to be two bases for Defendants' allegations of bad faith. The first is that counsel for Plaintiffs showed bad faith by making material misrepresentations in settlement negotiations. *See, e.g.*, Defendants' Memorandum in Support of Attorneys' Fees ("Defendants' Memorandum") at page 4, n. 5 and page 14. The

---

[1] Defendants were granted leave to depose Plaintiffs' counsel for the sole purpose of obtaining Mr. Moore's identity, but ultimately chose for whatever reason not to take his deposition once his identity was revealed.

2

second is that Plaintiffs' pursuit of the litigation was without adequate factual support. *See id.* at 16. Mr. Moore's testimony, which was subject to cross-examination by a three-judge panel of this Court, including Chief Judge Legg, refutes both of these claims by Defendants.

Mr. Moore testified that he provided Plaintiffs' counsel with the names of individuals who would ultimately become the Plaintiffs in this case. *See* Exhibit 1 at 69 (disciplinary hearing transcript). He testified that Plaintiffs' counsel asked him to reveal the source of his information. *See id.* at 74. He furthermore reiterated the information previously disclosed in his Affidavit - that he originally told Plaintiffs' counsel that he would identify his source, and then changed his mind a few days later. *Id.* at 76-77. The reason why he changed his mind was that he was afraid for his family's safety if he revealed his source. *Id.*[2]

Mr. Moore's fears for his family's safety if he revealed his source of his knowledge of the credit report ring were apparently well-founded. In an April 25, 2002, Alert, the U.S. Treasury Department's Office of the Comptroller of the Currency warned of organized criminal gangs infiltrating banks for identity theft purposes. *See* Exhibit 2. "Federal law enforcement officials have learned that organized gangs are using coercion and threats of bodily harm to persuade individuals to assist them in the fraud scheme." *Id.* This Treasury Department Alert also describes a *modus operandi* corresponding precisely to Plaintiffs' theory of the case

---

[2] Mr. Moore testified that Plaintiffs' counsel attempted to persuade him to provide the information as promised. "Mr. Sweetland was very disappointed that I had changed my mind, and I remember that he insisted that I re-reconsider based on that he had already made representations that I would be forthcoming." *Id.* at 77.

3

reflected in their Complaint and Amended Complaint:

> In some cases, tellers already employed by financial institutions are being recruited. More commonly, individuals are being encouraged by gang members to apply for teller positions at financial institutions for the sole purpose of providing access to the institution's operating systems and customer access information…National banks should exercise care and due diligence in their hiring practices …."

*Id.*

### 2. Plaintiffs And Their Counsel, Rodney R. Sweetland, III's Reliance Upon Moore's Corroborated Information Was Clearly Not In Bad Faith.

Mr. Moore is a graduate of Rutgers University's journalism program. *See* Exhibit 1 at 60. While a reporter for New Jersey's second largest daily newspaper, the Bergen County Record, he was nominated for a Pulitzer prize. *See id.* During the course of his employment as a reporter he developed a source that provided him with the information of the credit reports being obtained through Bank of America. *See id.* at 67-68. It was perfectly reasonable for Plaintiffs' counsel to rely upon Mr. Moore, particularly when his version of events was corroborated during discovery.

Plaintiffs credit reports showed what would remain unexplained inquiries from a Bank of America entity. Invoices obtained from Trans Union, combined with internal electronic mail correspondence from Banc of America Auto, demonstrated that there must have been many thousands of individuals in addition to Plaintiffs who also had their credit reports accessed through Bank of America.

4

Counsel's objectively reasonable reliance on Mr. Moore and the corroborative information obtained during discovery is not sanctionable under any of Defendants' theories. Section 1927 is a "drastic sanction provision." *In re: Pittcon Industries, Inc. v. Robert A. Anderson Wood Products, Inc.*, 953 F.2d 1383, *3 (4th Cir. 1992) (unpublished)[3]. "Something more than a lack of merit is required for § 1927 sanctions or they would be due in every case." *McMahan v. Toto*, 256 F.3d 1120, 1129 (11th Cir. 2001), *cert. denied*, 539 U.S. 914, 123 S. Ct. 2273 (2003). Bad judgment or well-intentioned zeal are not sufficient to result in imposition of sanctions under § 1927. *LaSalle v. First Connecticut Holding Group, L.L.C.*, 287 F.3d 279, 289 (3rd Cir. 2002).

A finding of bad faith is a precondition to imposition of fees on an attorney under § 1927. *Brubaker v. City of Richmond*, 943 F.2d 1363, 1382, n.25 (4th Cir. 1991). Bad faith may be inferred "only if actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay." *Shafii v. British Airways*, PLC, 83 F.3d 566, 571 (2d Cir. 1996) (internal quotation marks omitted). In the context of a different attorneys' fees-shifting statute incorporating a "vexatiousness" standard, this Court has defined "bad faith" as not simply bad judgment or negligence, but rather, the conscious doing of a wrong because of dishonest purpose or moral obliquity. *United States v. Gugnani*, 178 F. Supp.2d 538, 542 (D. Md. 2002) (applying Hyde Amendment, 18 U.S.C. §

---

[3] In accordance with Fourth Circuit Local Rule 36(c), copies of any unpublished decisions cited herein are attached as Exhibit 3.

5

3006A). It contemplates a state of mind affirmatively operating with furtive design or ill will. *Id.*

None of the three pleadings at issue herein (Plaintiffs' Motion for Partial Summary Judgment, Motion to Recuse and Opposition to Motion for Summary Judgment) meet the articulated standards for bad faith.[4] Examples of pleadings that would demonstrate bad faith are: resubmitting a motion that had previously been denied, bringing a motion based upon "facts" the opposite of which were previously found by the court, repeated motions to reargue and continually engaging in obfuscation of the issues, hyperbolism and groundless presumptions. *See Hudson Motors Partnership v. Crest Leasing Enterprises*, 845 F. Supp. 969, 978-979 (E.D.N.Y. 1994) (citations omitted). None of the three pleadings filed by Plaintiffs contained intemperate language. Further, the arguments in each pleading were supported with colorable authority[5] and no motions for reconsideration were ever filed in connection with these matters.

The minimum degree of bad faith necessary to support an award of sanctions under § 1927 is that which evidences "a serious and studied disregard for the orderly

---

[4] This is particular true as to the individual Plaintiffs. *See, e.g., Gundacker v. Unisys Corp.*, 151 F.3d 842, 849 (8th Cir. 1998), *cert. denied*, 525 U.S. 1070, 119 S. Ct. 801 (1999) (conduct of counsel may not be imputed to client for sanctions purposes).

[5] A court must make a separate determination on both the issue of reasonableness of the claims and the purpose for which the pleading was filed before imposing sanctions under § 1927. *See Federal Deposit Insurance Corp. v. Calhoun*, 34 F.3d 1291, 1300-01 (5th Cir. 1994). If the legal theory advanced by the attorney is objectively colorable, then the party seeking sanctions must demonstrate an improper purpose. *Id. See also United States v. Gritz Bros. Partnership*, 155 F.R.D. 639, 645 (E.D. Wisc. 1994) (subjective bad faith or malice required on the part of the attorney). This is particularly true where, as here, the legal issue has never been litigated and is one of first impression. *Id.* citing *Overnight Transport Co. v. Chicago Indus. Tire Co.*, 697 F.2d 789, 790-94 (7th Cir. 1983).

process of justice." *Pacific Dunlop Holdings, Inc. v. Barosh*, 22 F.3d 113, 119 (7th Cir. 1994). Garden variety summary judgment proceedings of the type for which Defendants now seek sanctions, which are a component of virtually every civil case in federal courts, simply do not evidence a serious and studied disregard for the orderly administration of justice.

The fact that Defendants were still interested in settling the case, even after this Court granted summary judgment, shows that Plaintiffs' arguments were colorable. After Plaintiffs filed their appellate brief, and after Fourth Circuit-ordered mediation failed to resolve the case, Defendants' counsel sent an unsolicited offer to Plaintiffs' counsel to offering to settle. *See* Exhibit 4. Such an offer is admissible in consideration of an opposition of a request for attorneys' fees. *See, e.g., EMI Catalogue Partnership v. CBS/Fox Co., MGM*, 1996 WL 280813 *2 (S.D.N.Y. 1996).

Similarly, Defendants' argument that counsel's failure to abandon this case demonstrates bad faith (Defendant's Memorandum at 16) is unavailing. Poor judgment in continuing proceedings is an insufficient basis upon which to impose sanctions under § 1927. *Schlaifer Nance & Co., Inc. v. Estate of Warhol*, 194 F.3d 323, 340 (2d Cir. 1999). "Current case law does not establish clear standards and direction for attorneys caught between the requirement not to prosecute a meritless claim and the duty to zealously represent a client." *In re Cohen v. Fox*, 122 F.3d 1060

*4 (4th Cir. 1997) (unpublished) (reversing imposition of sanctions under § 1927 for continuing a case).[6]

An even more egregious degree of misconduct is required to support the imposition of fees under the Court's inherent powers. Sanctions under a court's inherent authority are appropriate where a court finds "that fraud has been practiced upon it, or that the very temple of justice has been defiled," *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991), *rehearing denied*, 501 U.S. 1269, 112 S. Ct. 12 (1991) (citations omitted), or where a party demonstrates bad faith by "disrupting the litigation or hampering enforcement of a court order." *Hutto v. Finney*, 437 U.S. 678, 689-690, n.14, 98 S. Ct. 2365 (1978), *rehearing denied*, 439 U.S. 1122, 99 S. Ct. 1035 (1979). For example, willful destruction of evidence is an example of conduct sufficient to justify sanctions under the court's inherent authority. *See Silvestri v. General Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001). Even the most uncharitable inferences from Defendants' allegations do not suggest misconduct that rises to a level warranting invocation of this Court's inherent authority.[7]

## CONCLUSION

There was nothing sufficiently unusual in Plaintiffs' prosecution of their claims that would establish any bad faith. The claim that Plaintiffs' counsel was dishonest

---

[6] Plaintiffs deny that there was any lack of merit in their claims. Rather, this authority merely underscores that continuation of even frivolous claims cannot establish the existence of bad faith.

[7] Even when Magistrate Judge Grimm assumed that Plaintiffs' counsel was dishonest in settlement discussions based upon the limited evidence available to him at the time, he found that dishonesty in settlement discussions was an insufficient basis upon which to impose sanctions under the Court's inherent authority. *Ausherman v. Bank of America*, 212 F. Supp.2d 435, 444 (D.Md. 2002).

during settlement negotiations, was based upon a misreading of counsel's deposition testimony. Uncontradicted testimony by Plaintiffs' counsel, Rodney R. Sweetland, III, and his source, Michael Moore, however, clearly demonstrates that Plaintiffs' counsel believed he could provide the information when he made the settlement offer in question. When he found he was no longer in a position to provide that information after Mr. Moore changed his mind, he promptly withdrew the offer.

Wherefore, Plaintiffs and their counsel respectfully reiterate their request that Defendants' Motion for Attorneys' Fees be denied.

Dated: July 12, 2004

Respectfully Submitted,

_____
Peter F. Axelrad (Fed. Bar No. 00656)
Council, Baradel, Kosmerl & Nolan, P.A.
125 West Street
Fourth Floor
P.O. Box 2289
Annapolis, Maryland 21404
(410) 268-6600 – Annapolis
(410) 269-6190 – Baltimore
(301) 261-2247 – Washington
(410) 269-8409 (facsimile)

_____
Pamela A. Bresnahan (Fed. Bar No. 00578)
Vorys, Sater, Seymour and Pease LLP
1828 L Street, N.W.
Suite 1111
Washington, D.C. 20036-5109
(202) 467-8800
(202) 467-8900 (facsimile)
Counsel for Respondent

_____
Rodney R. Sweetland, III (Fed. Bar No. 12707)
1200 17th Street, NW
5th Floor
Washington, D.C. 20036
Counsel for Plaintiff

## CERTIFICATE OF SERVICE

Pursuant to Fed. R. Civ. P. 5(b)(2)(D) and the Local Rules, I hereby certify that on this 12th day of July, 2004, true copies of the foregoing Supplemental Memorandum of Points and Authorities in Opposition to Defendants' Motion for Attorneys' Fees was filed electronically. Service of this filing to all parties, including those listed below, will be accomplished by operation of the Court's ECF system and hand-delivery, and parties may access this filing through the Court's system:

Ava Lias-Booker
Saul Ewing LLP
100 South Charles Street
Baltimore, Maryland 21201

_____
Peter F. Axelrad

10