# EXHIBIT 3

953 F.2d 1383 (Table)
**Unpublished Disposition**

Page 1

(Cite as: 953 F.2d 1383, 1992 WL 17933 (4th Cir.(Md.)))

NOTICE: THIS IS AN UNPUBLISHED OPINION.

(The Court's decision is referenced in a "Table of Decisions Without Reported Opinions" appearing in the Federal Reporter. Use FI CTA4 Rule 36 for rules regarding the citation of unpublished opinions.)

United States Court of Appeals, Fourth Circuit.

In re PITTCON INDUSTRIES, INCORPORATED, Debtor.
ROBERT A. ANDERSON WOOD PRODUCTS, INCORPORATED; Robert M. Anderson; Gordon &
Simmons; Roger C. Simmons; Ralph B. Gordon, Plaintiffs-Appellants,
v.
ACOUSTICAL CEILING ACCESSORIES CORPORATION, INCORPORATED; American Metal
Forming Corporation; Abraham Leser; Tibor Gross, Defendants-Appellees,
and
Maryland National Bank, Defendant.

No. 91-1522.

Argued Oct. 30, 1991.
Decided Feb. 6, 1992.
As Amended March 5, 1992.

Appeal from the United States District Court for the District of Maryland, at Baltimore. Walter E. Black, Jr., Chief District Judge. (CA-90-2860-B, CA-990-2861-B, BK-88-4-1475-PM)

Argued: Leslie Allison Powell, Gordon & Simmons, Frederick, Md., for appellants; Janet Marsha Nesse, Gins & Seeber, P.C., Washington, D.C., for appellees.

On Brief: Ralph Gordon, Roger C. Simmons, Gordon & Simmons, Frederick, Md., for appellants.

D.Md.

REVERSED.

Before PHILLIPS and LUTTIG, Circuit Judges, and GERALD W. HEANEY, Senior Circuit Judge of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

OPINION

PER CURIAM:

**1 Appellants challenge the order of the United States District Court for the District of Maryland affirming the imposition of sanctions under 28 U.S.C. § 1927 by the United States Bankruptcy Court for the District of Maryland. [FN1] Because we conclude that the imposition of sanctions under 28 U.S.C. § 1927 for the reasons expressed by the bankruptcy court was a clear abuse of discretion, we reverse.

I

In May of 1988, Pittcon Industries (Pittcon) filed a voluntary petition in bankruptcy under Chapter 11 of the Bankruptcy Code. The trustee in bankruptcy soon thereafter instituted two actions, one against appellant law firm Gordon & Simmons, the other against appellant Robert A. Anderson Wood Products, Inc., to recover payments Pittcon had made to them, on the ground that those payments were voidable as preferential transfers within the 90-day period of presumed insolvency provided by § 547 of the Bankruptcy Code.

In an attempt to develop evidence that Pittcon was solvent at the time the allegedly preferential transfers were made, so as to avoid the presumption of insolvency, appellants sought to discover, among other things, information regarding the valuation of Pittcon's assets from appellees American Metal Forming Corporation (AMFC) and Acoustical Ceiling Accessories Company (ACAC), an affiliate of AMFC, and Maryland National Bank. Under a court-approved plan of reorganization negotiated by Pittcon, AMFC and ACAC, AMFC had purchased all

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

of Pittcon's assets on October 19, 1990. Appellants believed that AMFC and ACAC were in a position to know the value of Pittcon's assets, and consequently, whether Pittcon was insolvent at the time the allegedly preferential transfers were made, given the fact that AMFC and ACAC had done independent research in putting together an offer to purchase Pittcon's assets. Appellants therefore procured service of subpoenas upon agents of AMFC, ACAC, and Maryland National Bank commanding appearance for depositions and the production of all documents related to their business affairs with Pittcon. The agents of AMFC and ACAC were served in Baltimore, where appellants knew that these agents would be attending court proceedings related to the Pittcon reorganization. Service was effected by a private process server within the precincts of the federal courtroom in which these proceedings were being held. [FN2] AMFC, ACAC, and Maryland National Bank filed motions for a protective order and to quash service. They argued that any knowledge they had of Pittcon was irrelevant to the preference actions since they were not parties to those actions. AMFC and ACAC also argued that they had in no way associated with Pittcon until long after the allegedly preferential transfers were made, and that they, both New York corporations, and their agents, New York citizens, were immune from process in Maryland.

The bankruptcy court agreed with these contentions and granted the motions for protective order and to quash service. It also granted the applications of AMFC, ACAC, and Maryland National Bank for attorneys' fees and costs as sanctions under 28 U.S.C. § 1927. [FN3] On appeal, the district court summarily affirmed the award to AMFC and ACAC, but reversed the award to Maryland National Bank. [FN4] This appeal followed.

II

**2 The issue is whether sanctions were validly imposed under 28 U.S.C. § 1927, which provides that "[a]ny attorney ... who so multiplies the proceedings in any case unreasonably and vexatiously may be required to satisfy personally the excess costs, expenses and attorney's fees reasonably incurred because of such conduct." A court's decision to impose sanctions for frivolous, bad faith, or vexatious litigation under 28 U.S.C. § 1927, is reversible only for an abuse of discretion. Blue v. United States Dep't of Army, 914 F.2d 525, 538-39 (4th Cir.1990). We think the imposition of sanctions here was an abuse of discretion.

The record indicates, though most ambiguously, that § 1927 sanctions were imposed on two grounds: the overbreadth and non-justification for appellants' discovery requests, and the way in which service of the discovery subpoenas was effected.

A

Although counsel for appellants probably could have tailored the discovery requests that generated this controversy more narrowly, there was certainly a reasonable basis for their seeking discovery from AMFC and ACAC. There were discrepancies between the financial statements produced by Pittcon and those produced by Maryland National Bank. Significantly, Pittcon did not include the value of certain trade secrets and other technological processes it owned in its asset valuations. Because AMFC and ACAC were planning to purchase Pittcon's assets, they were in a position to know their value, and this was information appellants reasonably could seek to discover from AMFC and ACAC.

Of course, over-broad discovery requests can be made with the intent unreasonably and vexatiously to multiply the judicial proceedings before a court. But we discern no basis for finding unreasonable, vexatious conduct on anyone's part in the breadth of the discovery sought here. Appellants were made defendant parties to preference actions brought by the Pittcon trustee. They raised a straightforward defense to these actions--that Pittcon was not insolvent at the time the allegedly preferential payments were made-- and they sought to discover evidence supporting this defense. Given the discrepancies in the evidence already in their possession, appellants' counsel reasonably could suppose that AMFC and ACAC, at the time would-be purchasers of Pittcon, had information that was relevant to their defense. To the extent the discovery requests they made were over-broad, it cannot be said on this record that they were made in bad faith, unreasonably and vexatiously to multiply the proceedings before the bankruptcy court, rather than with the intent to litigate the matter aggressively. Cf. Smith v. BIC Corp., 869 F.2d 194, 202 (3d Cir.1989) (affirming order quashing subpoenas because information sought was irrelevant, but vacating sanctions because counsel's actions were "more indicative of vigorous advocacy than ... bad faith").

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Accordingly, the bankruptcy court abused its discretion to the extent this was the basis for its imposition of sanctions.

B

**\*\*3** The imposition of § 1927 sanctions because of the manner of service of process upon the agents of AMFC and ACAC seems to have been based on (1) the legal conclusion that as non-resident witnesses or parties they were immune to service in Maryland, and (2) the fact that service was actually effected within the bankruptcy court courtroom, which the bankruptcy judge characterized as an "affront to the Court." J.A. 109. Neither, without more than appears of record, warranted a sanction under the stringent standards of § 1927.

Whether the agents were legally immune to service under the circumstances is at least an arguable proposition of law. Even if they were, this alone would not justify a conclusion that void service upon them demonstrated an "unreasonable and vexatious" "multiplying of proceedings" by the counsel who had set in motion the service of process. This was a wholly unjustified legal conclusion.

Similarly, the fact alone that a private process server may have effected service in a courtroom could not justify a determination that counsel who caused issuance of the process had by that act violated § 1927. This is a complete mis-reading of that drastic sanction provision. Its invocation on this basis was a clear abuse of discretion.

REVERSED.

FN1. As in various other respects noted in this opinion, the bankruptcy court's order imposing sanctions is unclear as to the subject of the sanction-whether the appellants, or their counsel, or both. Appellants indicate that they have taken this appeal because of their confusion on this score. We treat it as an appeal on behalf of their counsel, who is the only proper subject of a sanction award under 28 U.S.C. § 1927. *See FTC v. Alaska Land Leasing, Inc.*, 799 F.2d 507 (9th Cir.1986).

FN2. The process server testified, however, that no proceedings had begun and the judge and courtroom clerk were not present when he entered the courtroom to serve the subpoenas on the agents of AMFC and ACAC. According to the process server, he only entered the courtroom to serve process because the persons identified to him as agents of AMFC and ACAC rushed into the courtroom in an apparent attempt to avoid service. The exact circumstances under which service was effected were not the subject of specific factfindings beyond the place of service, and are in any event irrelevant to our disposition.

FN3. Even the exact basis of the court's assumption of authority for imposing sanctions is unclear. The only indicated basis is that § 1927 was invoked by the appellees in their motion for sanctions. The court must be taken to have acted upon that, having invoked no other source. The parties have joined issue on that basis on this appeal.

FN4. Maryland National Bank does not appeal the decision of the district court.

953 F.2d 1383 (Table), 1992 WL 17933 (4th Cir.(Md.)), Unpublished Disposition

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

**H**
Only the Westlaw citation is currently available.

United States District Court, S.D. New York.

EMI CATALOGUE PARTNERSHIP, Plaintiff,
v.
CBS/FOX COMPANY, MGM Entertainment Co. and United Artists Corporation,
Defendants.

No. 86 Civ. 1149 (PKL).

May 24, 1996.

Jeffrey I. Carton, Parcher & Hayes, P.C., New York City.

Joseph F. Tringali and Dennis C. O'Donnel, Simpson Thacher & Bartlett, New York City.

Douglas C. Fairhurst, Townley & Updike, New York City.

*MEMORANDUM ORDER*

LEISURE, District Judge:

*1 In this motion, MGM Entertainment Company and United Artists Corporation (collectively "MGM/UA") and CBS/Fox Company ("CBS/Fox"), seek an award of costs and attorney's fees pursuant to the Copyright Act. See 17 U.S.C. § 505 (1976). For the reasons set forth below, the motion is denied.

BACKGROUND

On April 28, 1994, after a two week bench trial, this Court found against plaintiff EMI Partnership ("EMI") and for defendants MGM/UA and CBS/Fox in a copyright infringement action. The case arose out of CBS/Fox's home video distribution of certain motion pictures which had been produced by MGM/UA and contained musical compositions for which EMI owned the copyright. See Opinion and Order ("Opinion") at 2. The dispute centered on the interpretation of a contract dated December 15, 1982, pursuant to which MGM/UA sold its music publishing business to CBS, EMI's predecessor in interest in the musical compositions at issue. See Opinion at 2. The Court found that disputed Section 11.2 of the contract granted MGM/UA the right to license manufacture and distribution of video copies of MGM/UA films. Therefore, the Court ruled that CBS/Fox was manufacturing and distributing films pursuant to a valid license, and not infringing on EMI's copyright. See Opinion at 11. In the motion now before the Court, defendants MGM/UA and CBS/Fox argue that EMI's copyright claim was "objectively unreasonable," and that, as prevailing parties, MGM/UA and CBS/Fox should be awarded attorney's fees under the governing standard of *Fogerty v. Fantasy, Inc.*, 114 S. Ct. 1023, 1026 (1994).

DISCUSSION

The Copyright Act of 1976, see 17 U.S.C. § 505, provides that in any copyright infringement action "the court may ... award a reasonable attorney's fee to the prevailing party as part of the costs." The standard for awarding attorney's fees under § 505 was recently reviewed by the Supreme Court in *Fogerty*. There, the Court "reject[ed] both the 'dual standard' [FN1] adopted by several of the Courts of Appeals, and [the] claim that § 505 enacted the British Rule for automatic recovery of attorney's fees by the prevailing party." *Id.* at 1033. Instead, *Fogerty* established that "[p]revailing plaintiffs and prevailing defendants are to be treated alike, but attorney's fees are to be awarded to prevailing parties as a matter of discretion." *Id.*

The *Fogerty* Court declined to lay down an exact prescription for determining whether to award fees. *See id.* Rather, the Court cited with approval *Lieb v. Topstone Industries, Inc.*, 788 F.2d 151, 156 (3rd Cir. 1986), which lists "several nonexclusive factors that courts should consider in making awards of attorney's fees to any prevailing party. These factors include 'frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components on the case) and the need in particular circumstances to advance consideration of compensation and deterrence.'" *Fogerty*, 114 S. Ct. at 1033 n.19 (quoting *Lieb*, 788 F.2d at 156).

*2 Of the *Lieb* factors cited by the Supreme Court, only objective unreasonableness is implicated centrally in the case at bar. The Court finds that EMI's claim was not so objectively unreasonable as to justify an award of attorney's fees in this case.

[FN2] While EMI's suit was ultimately unsuccessful, it withstood summary judgment, presented a sufficient number of doubtful issues to go forward for a ten day trial, and was partially settled to EMI's advantage as a result of negotiations after trial and before announcement of the Court's decision.

CBS/Fox has urged that under Fed. R. Evid. 408, the Court should not rely on evidence of settlement negotiations to find that a copyright claim was not objectively unreasonable. However, the Court does not find that Rule 408 bars consideration of settlement discussions in determining whether to award attorney's fees under § 505 of the Copyright Act.

Rule 408 provides in part that "[e]vidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount." But here, evidence of the alleged settlement negotiations is not being offered to prove "either liability for or invalidity of the claim or its amount." Rather, it is being offered to show that the Court's rejection of the claim should not merit an award of attorney's fees under the Court's power of equitable discretion, and, specifically, that the claim was not objectively unreasonable under *Lieb* as cited in *Fogerty*.

While proof of objective unreasonableness of a claim is closely related to proof of "invalidity of the claim," by its own terms, Rule 408 "does not require exclusion when the evidence is offered for another purpose" than "to prove liability for or invalidity of the claim or its amount." Although proving that a claim was not objectively unreasonable does not appear on the short list of permissible other purposes within Rule 408, [FN3] that list is merely suggestive, and is not intended to be exclusive. *See* Fed. R. Evid. 408 advisory committee's note. Because nothing in the language of Rule 408 requires exclusion of evidence of settlement negotiations on issues "other than liability for or invalidity of a claim or its amount," the Court can consider evidence of settlement negotiations where, as here, that evidence is probative of the objective unreasonableness of the claim for purposes of determining whether to award attorney's fees under the Copyright Act. [FN4]

Equity vests broad discretion with this Court. But, in the instant case, awarding attorney's fees would not serve either of the two principal purposes behind the Federal Copyright law noted in *Fogerty*, (1) securing a fair return for an author's creative labor or (2) stimulating artistic creativity for the general public good. [FN5] While defendants were put to the expense of proof in this case, it cannot be said that copyright infringement claims such as plaintiff brought here "stifle artistic creativity" that would serve "the general public good."

CONCLUSION

*3 The Court finds that EMI's copyright claim was not objectively unreasonable. While the equitable discretion of the Court to award fees remains broad, the Court cannot say that considerations of justice support an award of attorney's fees to the prevailing parties in this case. The motion is therefore DENIED.

SO ORDERED.

> FN1. Under the "dual standard", prevailing plaintiff's were generally awarded attorney's fees as a matter of course, while prevailing defendants were required to show that the original suit was frivolous or brought in bad faith. *See id.* at 1026.

> FN2. CBS/Fox and MGM/UA urge consideration of *Screenlife Establishment v. Tower Video, Inc.* 868 F. Supp. 47 (S.D.N.Y. 1994), where this Court found copyright plaintiff's "objectively unreasonable" pursuit of a claim merited an award of attorney's fees. But there, the Court described the underlying action as "at best speculative and remote," and found plaintiff's reliance "on an expert opinion premised on pure speculation" to be "unreasonable." *Id.* at 52. The *Screenlife* decision relied heavily on the Fourth Circuit case of *Diamond Star Bldg. Corp. v. Sussex Co. Builders,Inc.*, 21 F.3d 59 (4th Cir. 1994), which reversed a district court decision not to award fees. There, the Court of Appeals for the Fourth Circuit concluded from the trial record that "plaintiff had acted in an objectively unreasonable manner" by asserting an "utterly meritless claim" and a "patently frivolous position." *Id.* at 61.
> Such utter meritlessness as is indicated in *Diamond Star* and *Screenlife* does not exist in the instant case. At worst, this Court described EMI's unsuccessful argument as suggesting "a somewhat arbitrary place to

draw the line between the permissible and impermissible use of third parties in distribution," which found "no basis in the language of Section 11.2." Opinion at 10. This does not approach the finding of litigious overreaching which moved the courts in *Diamond Star* and *Screenlife* to award attorney's fees. Thus, movants' reliance on these cases is here misplaced.

FN3. "This Rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution." Fed. R. Evid. 408.

FN4. *Cf. Peer Int'l Corp. v. Luna Records,* 1995 WL 350916, at *1 (S.D.N.Y. June 9, 1995). There, the Court mentioned Rule 408 as one possible consideration as to the relevance of settlement negotiations on the question of attorney's fees, but the opinion ultimately turned on the finding that the size of the settlement offer reflected confusion of the parties regarding the number of claims actually in dispute.

FN5. As the Chief Justice explained in *Fogerty,*
The Constitution grants to Congress the power "To promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries." U.S. Const., Art. I, § 8, cl. 8. We have often recognized the monopoly privileges that Congress has authorized, while "intended to motivate the creative activity of authors and inventors by the provision of a special reward" are limited in nature and must ultimately serve the public good.... For example, in *Twentieth Century Music Corp. v. Aiken,* we discussed the policies underlying the 1909 Copyright Act as follows:
"The limited scope of the copyright holder's statutory monopoly ... reflects a balance of competing claims upon the public interest: Creative work is to be encouraged and rewarded, but private motivation must ultimately serve the cause of promoting broad public availability of literature, music, and the other arts. The immediate effect of our copyright law is to secure a fair return for an 'author's' creative labor. But the ultimate aim is, by this incentive, to stimulate artistic creativity for the general public good."
*Fogerty,* 114. S. Ct. at 1029 (footnotes and citations omitted).

1996 WL 280813, 1996 WL 280813 (S.D.N.Y.)

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

122 F.3d 1060 (Table)  
**Unpublished Disposition**

(Cite as: 122 F.3d 1060, 1997 WL 577583 (4th Cir.(N.C.)))

Briefs and Other Related Documents

NOTICE: THIS IS AN UNPUBLISHED OPINION.

(The Court's decision is referenced in a "Table of Decisions Without Reported Opinions" appearing in the Federal Reporter. Use FI CTA4 Rule 36 for rules regarding the citation of unpublished opinions.)

United States Court of Appeals, Fourth Circuit.

Joe G. BOST, Plaintiff-Appellee,  
Howard M. COHEN, Respondent-Appellee,  
v.  
Martha Erwin FOX, Defendant-Appellant,  
and  
Judith M. Bost; Lee Alton Denney, d/b/a Lee Denney Private Investigators;  
Patrick Galvin; Linda Steed; Lee Alton Denney, Defendants.

Nos. 94-2652, 95-1008.

Sept. 17, 1997.

Appeals from the United States District Court for the Western District of North Carolina, at Charlotte, (CA-91-279-3-MU); Graham C. Mullen, District Judge.

ARGUED: Thomas Drake Garlitz, CANSLER, LOCKHART & EVANS, P.A., Charlotte, North Carolina, for Appellant.

E. Fitzgerald Parnell, III, POYNER & SPRUILL, L.L.P., Charlotte, North Carolina, for Appellee. ON BRIEF: Deborah L. Edwards, POYNER & SPRUILL, L.L.P., Charlotte, North Carolina, for Appellee.

Before WILKINSON, Chief Judge, and HALL and ERVIN, Circuit Judges.

OPINION

ERVIN, Circuit Judge:

**1 Appellant Howard M. Cohen (Cohen) appeals from a district court order imposing sanctions against him under 28 U.S.C. § 1927 in an action he filed on behalf of his client Joe G. Bost (Joe) under 18 U.S.C. §§ 2510-2521 and North Carolina law. Cross-Appellant Martha E. Fox (Fox) appeals from the district court's order denying Rule 11 sanctions against Cohen. We affirm in part and reverse in part for the reasons hereinafter set forth.

I.

In June 1989, Joe and his wife Judith Bost (Judith) separated. Judith hired attorney Fox to represent her in a divorce action. Because Judith suspected her husband of having an affair, she hired a private investigator to surveil Joe.

Apparently, the investigator Lee Alton Denney (Denney) located Joe and his girlfriend in an Atlantic Beach, North Carolina, condominium. Denney placed a wireless microphone near the condominium door but never intercepted any conversation with the device. Joe became aware of the bugging device and also believed that his telephone had been tapped and that documents had been taken from his car.

On December 18, 1989, Fox filed a complaint in the District Court of Catawba County on behalf of Judith seeking divorce, alimony, and child support. Before trial, the court heard a motion in limine regarding evidence obtained by Denney. The court ruled that placing the bug was a "clear violation of 18 U.S.C. § 2511" and excluded from evidence any information obtained from Denney's investigation. See J.A. at 20-22, 26.

After Joe learned about Denney's investigation, he contacted an attorney, Jan Warner, who had expertise on illegal wiretapping in divorce cases. Warner contacted prospective defendant Fox to discuss the possibility of settlement. When it appeared that settlement was unlikely, Warner advised Joe to obtain North Carolina counsel and file suit.

On May 15, 1991, Joe retained the firm of appellant Cohen. Cohen determined that the statute of limitations on any claim under the Omnibus Crime Control Act would run on August 30, 1991. Cohen contends that he immediately began to investigate the facts and law, but that because of the surreptitious nature of the alleged acts and their potential criminal implications, it was virtually impossible to fully discover all the facts before filing a complaint.

Cohen filed a lawsuit on behalf of Joe under the Wiretap Act on August 29, 1991, naming Judith, investigator Denney, and Fox as defendants. The complaint alleged that Fox was liable for the acts of the investigator because he was her agent, she had aided and abetted his action, and he was acting in concert with Fox and Judith. Cohen argues that he relied on the following facts in making the claim against Fox: 1) Fox communicated with Denney before Denney's Atlantic Beach activities; 2) Fox received a written report, surveillance videotapes, and Joe's car key from Denney shortly after the surveillance; 3) Fox used information gathered by Denney in preparing the divorce complaint and to influence settlement; 4) Joe's attorney in the domestic proceeding warned Fox not to use Denney's report because he believed it to be illegally obtained; and 5) the domestic court judge excluded the Denney reports and testimony from evidence.

**2 In October 1991, before any discovery had been initiated, Fox, as counsel for Judith, notified Cohen that she intended to file a motion for summary judgment seeking Rule 11 sanctions against him. Cohen was provided affidavits from the defendants stating that Fox did not hire or direct investigator Denney. Cohen contends that the affidavits did not address several pertinent issues and raised questions about Fox's role in the investigation. Cohen was given five days in which to voluntarily dismiss his action, after which time the summary judgment/Rule 11 motion would be filed.

Cohen refused to dismiss the action and, on March 9, 1992, the defendants filed a joint motion for summary judgment. On March 25, 1992, Cohen deposed Fox and Judith. The depositions confirmed that Fox was not involved in hiring or controlling Denney. After the depositions, Cohen offered to dismiss the action against Fox if she would dismiss her Rule 11 claims. Fox rejected the offer.

Cohen then recommended to Joe that the claim against Fox be dismissed even though Fox did not agree to waive the Rule 11 claims. Joe would not agree to dismiss his claim. Cohen then suggested that Joe retain new counsel, and Joe, in turn, stated that he was already seeking to replace Cohen. Joe's replacement counsel entered an appearance on April 14, 1992.

In June 1992, Joe dismissed all claims against Fox, and on August 24, 1992, the district court granted summary judgment in favor of the remaining defendants on the federal claims. The district court declined to exercise its supplemental jurisdiction over the state law claims.

On September 10, 1992, Fox filed a Rule 11 motion for sanctions against Cohen and Joe. On November 14, 1992, the district court found no violation of Rule 11, but on its own motion held that Cohen had violated 28 U.S.C. § 1927 by continuing to prosecute the claims against Fox after she had filed a motion for summary judgment. The court fixed the amount of sanctions at $6,320.51, the total fees and expenses incurred from the time the summary judgment motion was filed until the Rule 11 motion. See J.A. at 222.

Cohen appealed the district court's order imposing sanctions under § 1927 and Fox cross-appealed from the denial of her Rule 11 motion.

II.

Cohen argues that the district court violated the Due Process Clause when, after dismissing the motion for Rule 11 sanctions against Cohen, it sanctioned Cohen under § 1927, [FN1] on its own motion and without notice. Attorney Fox had filed a motion for sanctions under Rule 11, contending that Cohen and his client Joe continued to prosecute meritless claims against her. The district court ruled that neither Joe nor Cohen had violated Rule 11, but on its own motion held that Cohen had violated § 1927 by deposing the defendants after Fox had filed a motion for summary judgment.

FN1. 28 U.S.C. § 1927 provides:
Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be

required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

An attorney facing sanctions is entitled to notice and some opportunity to respond to the charges. See *Roadway Express, Inc. v. Piper,* 447 U.S. 752 (1980). No fast rule dictates the content of due process in all cases; the constitutional minimum varies within differing contexts. Determining what constitutes due process involves a balancing of various factors, including fairness to sanctioned attorneys, the risk of error and the likely value of additional notice or hearing, and judicial and administrative efficiency. See *Donaldson v. Clark,* 819 F.2d 1551, 1558 (11th Cir.1987) (en banc).

**\*\*3** In considering a nearly identical claim, the Third Circuit held that imposing sanctions under § 1927 without prior notice violated due process. See *Jones v. Pittsburgh Nat'l Corp.,* 899 F.2d 1350 (3d Cir.1990). According to the Third Circuit, minimum due process is not satisfied by the mere existence of § 1927; particularized notice is required. See *id.* at 1357. The court reasoned that because the appellant was unaware that § 1927 was being relied upon, he had no notice of the particular factors he must address in order to avoid sanctions. See *id.*

While this court has not addressed the same issue, it has indicated that it might adopt a different view. *Green v. Foley,* an unpublished Rule 11 decision of this court relied upon by Fox, held that the existence of the rule in itself gives some notice to attorneys. 907 F.2d 1137, 1990 WL 86210 at \*4 (4th Cir. June 6, 1990), cert. denied, 498 U.S. 900 (1990). The court pointed out that a separate evidentiary hearing is not usually required before imposing Rule 11 sanctions, particularly where the relevant evidence has already been included in the record. In *In Re Kunstler,* 914 F.2d 505, 521 (4th Cir.1990), cert. denied sub nom. *Kunstler v. Britt,* 499 U.S. 969 (1991), we noted that "satellite litigation over sanctions should be limited to the extent possible ... to the record."

In addition to notice provided by the mere existence of § 1927, Fox argues that, as the district court reasoned, Cohen received adequate notice because Fox's Rule 11 motion was "briefed and heard by the court on the theory that Cohen pursued the lawsuit against Fox long after it should have been dismissed." Cohen had the opportunity to justify the conduct that Fox identified as sanctionable and chose not to do so.

While the district court was certainly justified in considering some possible sanctions against Cohen, we are persuaded by the Third Circuit's view that due process requires notice designed to inform the respondent of what matters he must address to avoid sanctions. In defending against Rule 11 sanctions, Cohen was free to choose whether to justify his continued prosecution of the case or to argue that such conduct was not sanctionable under Rule 11. That Rule 11 did not apply was a clear-cut argument; it was unnecessary for Cohen to attempt to justify his post-summary judgment motion conduct. If he had been forewarned that sanctions were also to be considered under § 1927, Cohen would have known that he had to address the vexatious prosecution issue in order to avoid sanctions.

Factoring in cost and efficiency issues, it does not seem particularly burdensome, costly, or time-consuming to have provided Cohen an opportunity to respond to the § 1927 issues.

Fox argues that providing notice would not have significantly improved the accuracy of the district court's decision because Cohen had no basis to justify his conduct. Fox argues further that because the district court was completely familiar with the case and had before it all the relevant facts, Cohen could add nothing to aid the decisionmaking process. We might agree that, in making its determinations based on highly objective standards, the district court had all the relevant facts before it and additional process would contribute nothing to accuracy or fairness. But the importance of the professional and financial interest at stake and principles of due process mandate great caution before assuming that the court knows all it needs to know and the respondent has nothing to add.

**\*\*4** The inquiry into whether an attorney has multiplied the proceedings "unreasonably and vexatiously" is an inherently subjective one in which an attorney's testimony about what information was available at the time, available alternatives, client pressures, and the existence of good or bad faith may be relevant. The assertion that, even if Cohen had had notice, he could not possibly have justified his conduct and avoided sanctions under § 1927 is belied by Cohen's brief to us which convincingly

argues that he acted neither unreasonably nor vexatiously in deposing the defendants. Although his arguments may not have won in the district court, they would have been relevant and helpful.

Under other circumstances, we would vacate the district court's award of sanctions under § 1927 and remand the issue to the district court for further proceedings after proper notice and a reasonable opportunity to be heard was accorded to Cohen. However, we hold on these facts that Cohen's conduct did not constitute a violation of § 1927 as a matter of law.

The district court imposed sanctions under § 1927 because it found that Cohen "continued a meritless lawsuit far beyond the time when it should have been dismissed." J.A. at 221. The court found that Cohen recklessly maintained a claim he knew to be factually unsupported--conduct tantamount to bad faith. In pursuing the meritless claim against Fox, Cohen caused Fox unnecessary costs, expenses and attorney's fees.

As an attorney, Cohen had an obligation to zealously represent his client which required him to attempt to verify the accuracy of the defendants' affidavits, rather than accept them at face value. The depositions constituted reasonable and limited investigation into the nature of Fox's involvement with investigator Denney. After the depositions confirmed information in the affidavits, Cohen offered to settle the claim, then advised his client to dismiss the claims against Fox, then withdrew from the case. Current case law does not establish clear standards and direction for attorneys caught between the requirement not to prosecute a meritless claim and the duty to zealously represent a client.

Without a doubt, Cohen's ill-considered conduct caused additional and unnecessary costs. Overall, though, this is one of those cases where the line dividing a yet uninvestigated case from a meritless case is easier to make in hindsight then it was for the attorney at the time. While, clearly, Cohen did not draw the line in the right place, he persuades us he did not act with the purpose of increasing costs for the defendants.

We hold as a matter of law that Cohen did not engage in sanctionable conduct under § 1927 and that the district court's award of § 1927 sanctions must be reversed. The district court abused its discretion by awarding § 1927 sanctions in this case. [FN2]

> FN2. Since we reverse the award of § 1927 sanctions as a matter of law, we need not consider whether the district court erred in fixing the amount of the sanctions under § 1927 in this case, since sanctions imposed in any amount were unjustified.

III.

Cross-Appellant Fox argues that the district court abused its discretion in denying her motion for sanctions under Rule 11. Rule 11, designed to deter baseless lawsuits, requires that to the best of the person's knowledge, information and belief, formed after an inquiry reasonable under the circumstances, [a court document]
**5 (1) is not being presented for any improper purposes ...;
(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; ...
Fed.R.Civ.P. 11(b).

In considering Rule 11 sanctions, a court should first focus on the objective inquiry into "whether a reasonable attorney in like circumstances would believe his actions to be legally and factually justified." NCNB Nat'l Bank v. Tiller, 814 F.2d 931, 941 (4th Cir.1987), *overruled on other grounds by* Busby v. Crown Supply, Inc., 896 F.2d 833 (4th Cir.1990). We use a three pronged inquiry to analyze Rule 11 issues: 1) whether the complaint was well grounded in fact; 2) whether the complaint was well grounded in law; and 3) whether the complaint was filed for an improper purpose. *See* Kunstler, 914 F.2d at 513.

The district court found that Cohen engaged in a reasonable inquiry into the facts and the law before he filed the action. The court found that, given the limited time available for investigation before the

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

122 F.3d 1060 (Table)
**Unpublished Disposition**

Page 5

(Cite as: 122 F.3d 1060, 1997 WL 577583 (4th Cir.(N.C.)))

statute of limitations ran, Cohen's investigation was adequate and that sufficient circumstantial evidence existed to state a cause of action against Fox. The court also found that Cohen undertook a reasonable investigation of the law, including legal research and expert consultation. Cohen's analysis, while incorrect in the court's view, was nevertheless well grounded in the law or in a good faith argument for the extension, modification, or reversal of existing law. Finally, the district court found insufficient evidence of any improper purpose.

We believe that the district court applied the correct legal analysis and that its decision was supported by the record. We do not believe that the district court abused its discretion in rejecting the Rule 11 sanctions and we affirm its decision on that aspect of the case.

IV.

We hold as a matter of law that Cohen was not guilty of conduct sanctionable under § 1927 and that the district court's award of § 1927 sanctions was an abuse of discretion and must be reversed. We affirm the district court's decision rejecting Fox's motion for Rule 11 sanctions.

*AFFIRMED IN PART; REVERSED IN PART*

122 F.3d 1060 (Table), 1997 WL 577583 (4th Cir.(N.C.)), Unpublished Disposition

Briefs and Other Related Documents (Back to top)

• 1995 WL 17056602 (Appellate Brief) Cross Reply Brief of Appellee/Cross-Appellant Martha E. Fox (Apr. 28, 1995)Original Image of this Document (PDF)

• 1995 WL 17056601 (Appellate Brief) Appellant/Cross Appellee's Reply and Answering Brief (Apr. 14, 1995)Original Image of this Document (PDF)

• 1995 WL 17056600 (Appellate Brief) Brief of Appellee/Cross-Appellant Martha E. Fox (Mar. 15, 1995)Original Image of this Document with Appendix (PDF)

• 1995 WL 17056599 (Appellate Brief) Brief of Appellant (1995)Original Image of this Document (PDF)

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works