IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

EARLE E. AUSHERMAN, et al.          *

         Plaintiffs          *

           vs.          *   CIVIL ACTION NO. MJG-01-438

BANK OF AMERICA CORPORATION,          *
et al.
         Defendants          *

*          *          *          *          *          *          *          *          *

## MEMORANDUM AND ORDER

The Court has before it Defendant's Motion for Attorneys' Fees [Paper 217] and the materials submitted by the parties related thereto.  The Court has heard the evidence, reviewed the exhibits, considered the materials submitted by the parties and had the benefit of the arguments of counsel.

The Court now issues this Memorandum of Decision as its findings of fact and conclusions of law in compliance with Rule 52(a) of the Federal Rules of Civil Procedure.


I.  **INTRODUCTION**

    A.  **Background**

This suit was brought by a group of Plaintiffs collected by counsel pursuant to the Fair Credit Reporting Act, 15 U.S.C. §1681 et seq. ("FCRA").

In brief[1], Plaintiffs alleged that Defendants Bank of America Corporation ("BAC") and Bank of America Auto Finance ("BAAF"), together with an unnamed and unidentified agent or employee of Defendants, called "John Doe 1" ("JD1"), obtained consumer credit reports on them between November 10, 1999 and July 17, 2000 without a permissible purpose, in violation of the FCRA.  Plaintiffs further alleged that the credit reports were sold or transferred to a second co-conspirator, "John Doe 2" ("JD2"), also unnamed and unidentified.

On March 18, 2003, the Court denied Plaintiff's Motion for Summary Judgment and granted Defendants' Cross Motion for Summary Judgment, dismissing all nine counts of the Amended Complaint. Order on Mot. for SJ at 19.  The Court held that BAC was not a proper defendant because Plaintiffs had produced no evidence suggesting actions taken directly by BAC that would serve to confer liability and offered no reason to pierce the corporate veil and hold BAC liable for the alleged acts of BAAF.  Id. at 8.  The Court also held that there was no evidence that JD1 and/or JD2 were employees of BAAF. Id. at 9. The Court further found no evidence to refute BAAF's evidence that it was not a consumer reporting agency and thus

---

[1]    A more full statement of the factual background is provided in the Court's Memorandum and Order on Summary Judgment. [Paper 211] issued March 18, 2003.

2

was not liable under sections of the FCRA that only apply to consumer reporting agencies.  The Court also ruled that Plaintiffs had failed to produce any evidence of knowing, intentional, or willful conduct by BAAF in violating either the FCRA or the corresponding Maryland statute.  Id. at 14. Finally, the Court held that the facts did not support an inference of res ipsa loquitur.

The Court entered Judgment for Defendants on March 18,2003 and Plaintiffs timely appealed to the United States Court of Appeals for the Fourth Circuit.  On December 19, 2004, the Court's Judgment was affirmed.  See Ausherman v. Bank of America Corp., 352 F.3d 896 (4th Cir.2003).  The Fourth Circuit noted that "[b]ecause Plaintiffs presented no evidence that BAAF acted willfully or negligently, we affirm the district court's grant of summary judgment to BAAF."  Id. at 898. The appellate decision noted that "[e]xtentive discovery by Plaintiffs failed to yield any information as to whom actually used the [code numbers and passwords used to access the consumer credit reports] to obtain credit reports or how the reports were obtained." Id. at 899.

On January 27, 2004, Defendants' filed the instant motion seeking to recover attorneys' fees incurred on the basis that Plaintiffs had pursued their claims against Defendants "well

3

after the lack of evidentiary support for those claims had been established." Defs.' Mot. for Attorneys' Fees at 2.

Plaintiffs seek reimbursement for fees incurred in relation to two specific filings. First, Defendants seek to recover fees incurred to oppose Plaintiffs' Motion for Summary Judgment and to respond to Plaintiffs' Opposition to their own Cross Motion for Summary Judgment. Defendants' argue that Plaintiffs' Motion for Summary Judgment should not have been filed given that the record in the case was "entirely one-sided in favor of the Defendants by the close of discovery (at the latest)". Def.'s Mot. for Attorneys' Fees at 2. As note above, Defendants' Cross Motion for Summary Judgment ultimately was granted on all counts by the Court.

Second, during the proceedings, Plaintiffs moved to recuse Magistrate Judge Grimm, who oversaw discovery in the case, asserting that 28 U.S.C. § 455(a)(2000) required recusal on the basis that Judge Grimm entered into a deed of trust with BOA five years prior to the litigation. After the issue was briefed by both parties, Plaintiffs' request was denied by Judge Grimm and the denial was affirmed by this Court. Defendants seek to recover the costs they incurred to oppose this motion for recusal and to oppose the papers that

4

Plaintiffs' filed in opposition to the motion's denial, both by Magistrate Judge Grimm and by this Court.

  B. <u>Plaintiffs' Motion for Summary Judgment</u>

  On May 17, 2002, Plaintiffs filed a Motion for Partial Summary Judgment [Paper 91] as to liability on Count 1 of the Amended Complaint [Paper 21], which alleged Defendants' willful violation of the FRCA under false pretenses - 15 U.S.C. §§ 1681n and 1681q.  The Complaint specified that an unidentified individual referred to as JD1 who worked for BOA obtained Plaintiffs' consumer reports under false pretenses and provided them to another unidentified individual referred to as JD2.

  At the time that Plaintiffs filed this motion, the parties were in the midst of a contentious discovery process. Defendants contended in numerous papers and affidavits that their internal investigation failed to identify any employee responsible for the acts alleged to have been committed by JD1 and sought to discover the factual basis for Plaintiffs' claims through discovery.  Defendant BAAF already had delivered to Plaintiffs its answers to Plaintiff's second interrogatories in which it detailed the course and results of its internal investigation into Plaintiff's allegations.  BAAF

provided evidence to show that the alleged credit inquiries related to Plaintiffs were not generated at the time of and after BAAF had ceased using the code that was used to access the reports and were neither made nor authorized to be made by BAAF.  <u>See</u> Def. BAAF's Answers to Second Inter. at 4-5. Nevertheless, Plaintiffs filed for summary judgment.

Ultimately, Defendants learned that none of the plaintiffs had personal knowledge of the facts underlying their claims but had "learned" of their credit information being disseminated improperly when they were contacted by Rodney R. Sweetland, III ("Sweetland") in a letter soliciting their consent to become plaintiffs in the lawsuit.  <u>See Ausherman, et al. v. Bank of America Corp. et al.</u>, 212 F.Supp.2d 435, 438 (D.Md. 2002).  Sweetland represented all twenty-five plaintiffs in the suit.[2]

Sweetland himself refused to provide essential discovery, despite a series of Court Orders handed down by Judge Grimm. <u>See</u> Papers 50, 58, 70, 106.  Sweetland asserted the attorney client privilege and work product doctrine in responses to interrogatories and directed his clients not to answer questions concerning any factual information told to them by

---

[2]    The number of plaintiffs eventually dropped from twenty-five to eighteen.

him.   Thus Plaintiffs refused to disclose to Defendants
factual information supporting their claims and eventually
were sanctioned $3000 for their failure to provide signed and
sworn answers to interrogatories.   See Paper 208.   Sweetland
himself failed to answer completely and non-evasively ten
interrogatories propounded upon him by Defendants as ordered
by the Court, which resulted in Judge Grimm ordering that
Sweetland be deposed.   See Paper 106.

During Sweetland's June 11, 2002 deposition, Defendants
obtained information relevant to Defendants' claims and
defenses that had not been disclosed prior to June 11.
Sweetland testified that in August 2000, his former client
Michael Moore ("Moore") had told him that "there was some
large scale operation operating out of Bank of America selling
credit reports to private investigators and anybody else who
was interested."   Depo. of Sweetland, June 11, 2002 at 14.
Neither Moore nor Sweetland nor Plaintiffs knew the identity
of JD1.   However, Sweetland represented to Defendants' counsel
in a letter written during settlement discussions that an
additional unidentified individual known as "John Doe Number
3" ("JD3") was the "kingpin of the network".   In the April 24,
2002 letter, Sweetland stated to Defendants' counsel that he
did not know the identity of JD3 because he had taken steps

7

not to learn this until his deposition had passed but he had
made arrangements to have the information provided to him.
Furthermore, Sweetland told Defendants that once he provided
them with the identity of JD3, "it will be relatively easy to
unravel the situation."  <u>Ausherman</u>, 212 F.Supp. at 439.

When asked during deposition what confidential
arrangements were made for the purpose of learning JD3's
identity, Sweetland answered:  "There were none. That was
language put there for the purposes of settlement bluster."
Sweetland Depo. at 74-75.  Defendant's counsel asked: "So this
is a lie?" to which Sweetland replied: "That is correct.  It
is not true."  Sweetland then was asked: "So you never made
any arrangements to find out the identity of John Doe Number
3?"  Sweetland replied: "No.  I was attempting to find out the
identity of John Doe Number 3, but while we were in settlement
discussions, I wanted to make the representation, for the
purposes of maximizing my clients' settlement position..."

In the hearing held on the instant motion, Moore
testified that he had advised Sweetland that he could obtain
the identity of JD3 and would provide it to Sweetland but that
about a week later he decided not to provide the name out of
concern for retaliation against his family.  Sweetland

subsequently advised Defendants' counsel that he was withdrawing the settlement parameters offered in his letter.

In his deposition, Sweetland also was asked when his conversations with Moore took place.  This timing issue was relevant in ascertaining when Sweetland undertook the determine the identity of the individual whom he accused of accessing the credit reports without authorization and that person's critical relationship to the defendants against whom the complaint was filed.  Sweetland testified: "[t]his would have been later in the case, probably p[a]st the initiation of discovery."  That is, it was only after filing the Complaint against Defendants that Sweetland began to attempt to determine the individual within or outside of Defendants who were responsible for accessing Plaintiff's credit reports. Meanwhile, Sweetland and Plaintiffs refused to provide information that was clearly discoverable under Rule 26(b)(1) so that Defendants could understand and defend themselves against the alleged claims.

Judge Grimm imposed sanctions in the amount of $8,649.25 on Sweetland, in his capacity as Plaintiffs' counsel.  These fees represented the costs incurred by Defendants in connection with their motion to compel the deposition of

Sweetland and the taking of the deposition itself.  The Order imposing sanctions was entered July 24, 2002. [Paper 131].

In light of the information revealed during Sweetland's deposition, Defendants filed an emergency motion requesting the Court to stay the Briefing Schedule. [Paper 111]  The Court granted the motion  [Paper 114] and a new briefing schedule was agreed to. [Paper 137].

Subsequently, Defendants timely filed a Cross Motion for Summary Judgment Paper 177]; Defendant BAAF timely filed its opposition to Plaintiffs' Motion for Partial Summary Judgment. [Paper 178]; and Defendants timely filed their Reply Memorandum in Support of their Cross Motion for Summary Judgment. [Paper 204].

Defendants seek a total of $71,877.00 in attorneys' fees incurred in opposing Plaintiffs' Motion for Summary Judgment and in filing their own Cross Motion for Summary Judgment.


B.   <u>Efforts for Magistrate Judge Recusal</u>

Approximately three weeks after Judge Grimm imposed sanctions on Sweetland and referred certain matters to the Court's Disciplinary Committee, Plaintiffs filed a Motion and Memorandum of Points and Authorities to Recuse Magistrate Judge Grimm. [Paper 143].  Plaintiffs sought Judge Grimm's

recusal because Bank of America, F.S.B. held the mortgage on
his principal residence.  Defendants filed a response letter
opposing the Motion to Recuse on August 22, 2002. [Paper 155]
Ultimately, the Motion to Recuse was denied by Judge Grimm.
[Paper 157]

Plaintiffs then filed a Memorandum objecting to the
Judge's denial of their recusal motion and requesting that
this Court certify the matter for interlocutory appeal under
28 U.S.C. § 1292(b) should the Court sustain Judge Grimm's
denial. See Pls'. Obj. to Mag. Judge's Memo. at 9. [Paper 159]
In response, Defendants filed a Memorandum in Opposition to
Plaintiffs' Objections to Magistrate Judge's Order, in which
they asked the Court to deny Plaintiffs' request for
interlocutory appeal.  See Defs.' Memo. in Opp. to Pls'. Obj.
at 10. [Paper 173]  The Court decided the recusal objection by
adopting in its entirety Magistrate Judge Grimm's Memorandum
and Order on the matter and noting that it found no
justification for certifying an interlocutory appeal with
regard to the motion.  See Memo and Order re Recusal Mot. at
2-3. [Paper 184]  Sweetland subsequently filed a Petition for
Writ of Mandamus on the recusal issue.  In its decision
affirming this Court's grant of summary judgment to
Defendants, the Fourth Circuit affirmed the denial of

Plaintiffs' motion to recuse Judge Grimm.  <u>Ausherman</u>, 352 F.3d at 899 n.2.

Defendants seek $13,831.00 in attorneys' fees incurred in connection with Plaintiffs' Motion to Recuse Magistrate Judge Grimm, Plaintiffs' Objections to Judge Grimm's ruling, and Plaintiffs' Request for Writ of Mandamus with the Court of Appeals.  In sum, Defendants seek an award in the amount of $85,708.00 against Plaintiffs and Sweetland, jointly and severally, for reimbursement for their attorneys' fees in regard to summary judgment and recusal.


II.  <u>LEGAL STANDARDS</u>

Defendants seek an award based upon:[3]

    1.    28 U.S.C. § 1927;

    2.    15 U.S.C. §§ 1681n(c) and 1681o(b); and

    3.    The Court's Inherent Authority

Each of the bases upon which Defendants seek an award requires a finding of bad faith.  The term "bad faith," as it is used in the instant fees context, requires a showing either

---

[3]    In its opening paragraph, Defendants' Motion for Attorneys' Fees stated that fees also were sought pursuant to Federal Rule of Civil Procedure 11 and Local Rule 109.2.  <u>See</u> Defs.' Mot. for Attorneys' Fees.  However, these two theories were not pursued in the Defendants' Memorandum in Support of Motion for Attorneys' Fees [Paper 227] and are not considered here.

that the person in question subjectively acted in bad faith -
knowing that he had no viable claim – or that he filed an
action or paper that was frivolous, unreasonable, or without
foundation. Ryan v. Trans Union Corp., 2001 WL 185182
(N.D.Ill.)(citing Christianburg Garment Co. v. EEOC, 434 U.S.
412, 421 (1978)).


   A.   28 U.S.C. § 1927

   28 U.S.C. § 1927 authorizes sanctions against an attorney
"who so multiples the proceedings in any case unreasonably and
vexatiously" such that the attorney "may be required by the
court to satisfy personally the excess costs, expenses and
attorneys' fees reasonably incurred because of such conduct."
A finding of bad faith is required in order to impose any
award of attorneys' fees under this section.  Chaudhry v.
Gallerizzo, 174 F.3d 394, 411 n.14 (4th Cir.1999).  Thus,
three requirements must be met before liability may be imposed
pursuant to § 1927: (1) a multiplication or proceedings by an
attorney; (2) conduct that can be characterized as pursued in
"bad faith" because it is unreasonable and vexatious; and (3)
a resulting increase in the cost of the proceedings.  Under §
1927, sanctions for filing a baseless claim properly may be

13

imposed where those claims are not supported by facts.  Walter
v. Fiorenzo, 840 F.2d 427, 435 (7th Cir. 1998).


   B.   15 U.S.C. §§ 1681n(c) and 1681o(b)

   Plaintiffs brought claims against Defendants pursuant to
the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681n(c),
prohibiting willful violations of the FCRA, and § 1681o(b),
prohibiting negligent violations of the FCRA.  Attorneys' fees
related to filings under these sections may be awarded to a
successful party as follows:

     "Upon a finding by the court that an unsuccessful
     pleading, motion, or other paper filed in connection with
     an action under this section was filed in bad faith or
     for purposes of harassment, the court shall award to the
     prevailing party attorney's fees reasonable in relation
     to the work expended in responding to the pleading,
     motion, or other paper."  15 U.S.C. § 1681(n)(c).

   See also 18 U.S.C. § 1681o(b)(making the same provision
of civil liability for negligent noncompliance).


   C.   The Court's Inherent Authority

   The Court's inherent authority to prevent litigation
abuse permits it to impose sanctions against a plaintiff who
has pursued a claim that is deemed to have been "vexatious,
wanton, or made in bad faith."  See Chambers v. NASCO, Inc.,
501 U.S. 32, 43 (1991).  Imposing sanctions in this context

reaches a court's inherent power to police itself, thus serving the dual purpose of "vindicat[ing] judicial authority without resort to the more drastic sanctions available for contempt of court..." Id. at 45-46.  In Chambers, the Supreme Court made clear that use of a court's inherent authority to impose sanctions is limited to circumstances involving either bad faith conduct or willful disobedience of court orders. Id. at 47.  Moreover, the Court held that the inherent power of a court can be invoked even if a statute exists which sanctions the same conduct, but cautioned that "[b]ecause of their very potency, inherent powers must be exercised with restraint and discretion."  Id. at 44, 50.

If the Court decides that it is appropriate to award attorneys' fees, several additional legal issues arise, including whether the amount of fees sought is reasonable, against whom the award should be assessed and the bearing of ability to pay on the award.  Each issue is discussed in turn.

D.    Amount of Fee Award

The Fourth Circuit has identified the twelve factors enunciated in Johnson v. Georgia Highway Express Inc., 488

F.2d 714 (5th Cir.1974)[4] as having a bearing on the appropriate amount of attorneys' fees awards for prevailing plaintiffs. Barber v. Kimbrell's, Inc., 577 F.2d 216, 226 n. 28. The Fourth Circuit has recognized the same method of calculation in determining the amount of a prevailing defendant's award of attorneys' fees. Arnold v. Burger King Corp., 719 F.2d 63, 67 (4th Cir.1983) (citing Tonti v. Petropoulous, 656 F.2d 212 (6th Cir.1981); Jones v. Dealers Tractors and Equipment Co., 634 F.2d 180 (5th Cir.1981). The relative financial positions of the litigants should also be assessed when appropriate. Id.

Whenever attorneys' fees are deemed appropriate and the plaintiff can afford to pay, "the congressional goal of discouraging frivolous suits weighs heavily in favor of

---

[4]    The twelve factors the courts have traditionally considered in awarding plaintiff's fees are:  (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases. Allen v. Burke, 690 F.2d 376, 379 (4th Cir.1982) (quoting Barber v. Kimbrell's Inc., 577 F.2d 216, 226 n. 28 (4th Cir.1978).

16

levying the full fees."  <u>Id.</u> (citing <u>Faraci v. Hickey-Freeman</u>
<u>Co., Inc.</u>, 607 F.2d 1025, 1028 (2nd Cir.1979).

When an award is made as a sanction - as distinct from a
legal fee award - it is not necessarily appropriate to award
an amount adequate to fully compensate a prevailing party.
Rather, the appropriate amount of a sanction award is the
minimum that will serve to adequately deter the undesirable
behavior.  <u>See</u> <u>In re Kunstler</u>, 914 F.2d 505, 524 (4th
Cir.1990).  "The limit of any sanction award should be that
amount reasonably necessary to deter the wrongdoer." <u>Id.</u>
(citing <u>White v. General Motors Corp., Inc.</u>, 908 F.2d 675,
684-85 (10th Cir.1990).


E.  <u>Persons Against Whom An Award Should be Made</u>

If there is to be an award, the Court must determine
whether counsel Sweetland alone is liable for the fees or
whether the 18 Plaintiffs[5] who continued to litigate the suit
at the time the documents under examination were filed also

---

[5]    In the case, there were originally twenty-five
Plaintiffs.  Eighteen remained at the time the motion for
summary judgment and the motion for recusal were filed.  These
Plaintiffs are:  Earle Ausherman, Stephanie Ball, William
Close, Ricardo Colon, Kirk DeCosmo, John Elder, Travis
Hamiltion, Ronnie Hogue, Freda Hogue, Shauna Hunter, Richard
Lammonds, Benjamin Salazar, Sherwood Schwarz, Paul Simons,
Arlen Slobodown, Guy Thomas, Ludmilla Werbos and Paul Werbos.

may be assessed a portion or all of the fees.  In this regard, the Court notes that Sweetland has stated that he wishes to assume full responsibility (to the limit of his ability to pay) for any sanctions that may be awarded by the Court against Plaintiffs.  <u>See</u> Pls.' Opp. to Defs.' Mot. at 26-27.

Under 28 U.S.C. § 1927 the Court may make an award against counsel but not a party.

The FCRA, 15 U.S.C. § 1681n and §1681o, is silent as to whether there can be an award against counsel in addition to, or rather than, a party.  In their briefs, Defendants only seek sanctions against the Plaintiffs pursuant to the FRCA. <u>See</u> Defs.' Mot. for Fees at 14; Defs.' Reply Memo. at 8. Likewise, at the hearing, counsel for Plaintiffs argued that this FCRA provision only applies to Plaintiffs and not their counsel, citing to <u>Ryan v. Trans Union Corp.</u>,2001 WL 185182 (N.D.Ill.2001)(noting that attorneys' fees statutes that are silent as to who is required to pay the award have been read to permit a fee award only against a party and concluding that § 1681n(c) does not authorize imposition of attorneys' fees upon a party's lawyer.)  Thus, the Court will consider the FCRA as authorizing only an award against Plaintiffs and not counsel.

Finally, when sanctions are assessed pursuant to the inherent authority of the Court they can be levied against counsel, plaintiffs or both.  It is necessary, however, to find that the sanctioned party acted in bad faith.  <u>See</u> <u>In re Weiss</u>, 111 F.3d 1159, 1171 (4th Cir.1997).

      F.   <u>Ability to Pay</u>

If attorneys' fees are granted, the Court must consider whether the amount assessed exceeds the ability to pay of the individual (or individuals, if Plaintiffs are assessed fees) against whom they are assessed.

An "[i]nability to pay what the court would otherwise regard as an appropriate sanction should be treated as reasonably akin to an affirmative defense, with the burden upon the parties being sanctioned to come forward with evidence of their financial status."  <u>In Re Kunstler</u>, 914 F.2d 505, 524 (4th Cir.1990) (citations omitted).  However, where the sanctioned party fails to present credible probative evidence of his ability to pay, the Court will not reduce an award of attorney's fees.  <u>See</u> <u>Chosin Few, Inc. v. Scott</u>, 209 F.Supp.2d 593, 607 (W.D.N.C. 2002).  Thus if fees are awarded, the Court must consider the factual question of ability to pay.

III.    <u>DISCUSSION</u>

　　A.  <u>Counsel</u>

　　The Court finds, without doubt, that sanctions are warranted against Plaintiffs' counsel Rodney R. Sweetland, III for his conduct in relation to the motions on summary judgment and recusal.  In view of the clear applicability of 28 U.S.C. § 1927, it is not necessary to reach the issue of whether the Court could also rely upon its inherent authority to sanction Sweetland.

　　Section 1927 provides authority to sanction attorneys who multiply proceedings in bad faith.  The statute authorizes sanctions for filing a baseless claim not supported by the facts.  <u>Walter</u>, 840 F.2d at 435.  "An attorney must ascertain the facts and review the law to determine whether the facts sit within a recognized entitlement to relief."  <u>In Re TCI, Ltd.</u>, 769 F.2d 441, 447 (7th Cir. 1985).  Sweetland's conduct in the instant matter exhibited the requisite bad faith.  At no time in the proceedings did Sweetland have any factual basis for pursuing Count I of the Amended Complaint against BAAF, the count for which Plaintiffs filed for summary judgment.  As the Court discussed in its Memorandum and Order on the motions for summary judgment submitted by both parties,

BAAF could not be held liable for the actions of the unidentified co-conspirators JD1 and JD2 unless Plaintiffs produced evidence that JD1 and/or JD2 were employees of BAAF. See Memo. and Order at 8-9. Plaintiffs failed to produce any such evidence in their Motion for Summary Judgment. Indeed, the paper fails even to address the relationship between BAAF and the "John Doe" individuals.

The Court finds the fact that Sweetland filed Plaintiffs' motion seeking summary judgment before ascertaining the identities of the alleged wrongdoers, the "John Doe" parties, let alone their critical relationship to BAAF for purposes of vicarious liability constitutes objective evidence of bad faith. Sweetland must have known that providing evidence on the identities of the "John Doe" parties and vicarious liability would be dispositive of Count I in the Complaint.

Approximately three weeks after filing the Motion for Summary Judgment, Sweetland moved to amend to remove the John Doe allegations from the Amended Complaint but did not withdraw the motion for summary judgment at that time. See Pls.' Mot. to Amend to Add Class Allegations [Paper 108]. On the contrary, in that same sealed motion, Sweetland sought to add class action allegations. These actions needlessly

multiplied the proceedings at a time when Sweetland should have been withdrawing counts from the complaint based on the unrefuted and contradictory factual record.  As a result, Defendants were required to prepare a Cross Motion for Summary Judgment that addressed each of the nine counts remaining at the close of discovery and to research and reply to the arguments forwarded by Plaintiffs in their opposition to Defendants' Cross Motion.

Through his filings relating to the summary judgment motion, Sweetland multiplied the proceedings with conduct that can be characterized as unreasonable and vexatious and that increased the cost of the proceedings.

Three weeks after Judge Grimm sanctioned him for his conduct in discovery and referred him to the Court's Disciplinary Committee, Sweetland's sought Judge Grimm's recusal.  The recusal effort was based solely on the fact that Bank of America, FSB at one time held a mortgage on Judge Grimm's house.  Furthermore, Sweetland's motion for recusal published the address of the Judge's residence, which the Court, sua sponte, placed under seal.  Defendants registered their objection to the recusal motion in the form of a letter.

22

As discussed in Judge Grimm's opinion on the matter, which was adopted in its entirety by this Court, "[c]ommon sense compels [that] [a] routine debt like a mortgage, fully secured by real property of an appraised value in excess of the debt, cannot be affected by the outcome of litigation involving the bank that is a mortgagee." Ausherman, et al. v. Bank of America Corp. et al, 216 F.Supp.2d 530, 533 (D. Md.2002).

Despite the Court's opinion, Sweetland filed objections to the ruling, where again he published Judge Grimm's home address, and which again Plaintiffs were forced to oppose. Thereafter, Sweetland filed a request for writ of mandamus, which was denied. See In re Benjamin Salazar, United States Court of Appeals for the Fourth Circuit, Case No. 02-2233.

Sweetland contends that attorneys' fees are not warranted for seeking recusal because the motion raised a question of first impression in any court. See Pls.' Op. to Defs.' Mot. for Attorneys' Fees at 15. The Court sees the matter differently. The mortgage issue raised by Sweetland was so obviously meritless that no other attorney has seen fit to raise the issue in any court. The fact that no one else had ever presented the baseless issue to any court does not excuse Sweetland's action. The Court thus finds that Sweetland

23

multiplied the proceedings with conduct that can be characterized as unreasonable and vexatious and that increased the cost of the proceedings through his efforts to recuse Magistrate Judge Grimm.

The Court, while holding Sweetland subject to sanctions with regard to his recusal motion notes that there will be no practical effect of this holding.  The award made - based upon both the summary judgment and recusal aspects of the case - would not be decreased even if there were no award as to the recusal matter in view of Sweetland's financial circumstances, as discussed below.


   B.   <u>Plaintiffs</u>

Plaintiffs were unsuccessful in their action brought under 15 U.S.C. §§ 1681n(c) and 1681o(b).  <u>See generally</u>, Memo and Order Denying Mot. of Pls. for SJ, Granting Mot. of Defs. for SJ. [Paper 211]  This section of the FCRA provides that if the Court determines that a pleading, motion or paper filed as part of the unsuccessful action was filed in "bad faith or for purposes of harassment" attorneys' fees shall be awarded to the prevailing party.

The Court does not find that the Plaintiffs (as distinct from their counsel) exhibited the bad faith necessary to

24

impose attorneys' fees upon them pursuant to the FCRA. "Bad faith", whether measured objectively or subjectively, is a high standard; it requires both an understanding of the action taken and an appreciation for the reasonableness of that action in the particular context. To prove the requisite bad faith, Defendants would need to show that the individual Plaintiffs in this case understood the basis on which summary judgment was sought and appreciated the fact that the motion provided no evidence on which summary judgment could be granted. Likewise, Defendants would need to show that each Plaintiff understood the basis of the recusal motion and the fact that the basis was without merit.    Defendants have not met this high standard. The record establishes that Sweetland himself contacted the eventual plaintiffs by unsolicited letter and asked each one to join the litigation. There is no indication that any plaintiff was involved in deciding which motions to file nor that any plaintiff had knowledge of the factual and legal arguments upon which the motions were based. Indeed, Sweetland acknowledges that the decisions to file a summary judgment motion, seek recusal of Magistrate Judge Grimm and oppose Defendants' Summary Judgment Motion were made by him alone. See Pls.' Opp. to Defs.' Mot. for Attorneys' Fees at 27. Under the circumstances, the Court cannot award

attorneys' fees pursuant to the FCRA.    The Court also declines to impose attorneys' fees upon Plaintiffs pursuant to its inherent authority because this authority also requires a finding of bad faith.

The Court notes that attorneys' fees are imposed to deter bad faith conduct by plaintiffs and their attorney.  In this case, the Plaintiffs' sheer ignorance of the proceedings in the case precludes a finding of objective or subjective bad faith.  Unfortunately, the deterrence effect of awarding attorneys' fees cannot be realized.  The Court notes, thus, that prospective plaintiffs are cautioned that they do hold responsibility as citizens in deciding to become a party to a frivolous suit.  The expenses that the Federal judiciary has incurred in resolving the myriad disputes that have arisen in the instant case ultimately are born by all citizens.  These expenses, although born by all citizens, should serve to deter those who willingly join as plaintiffs to lawsuits as if they were playing a lottery.


C.   Amount of Award

Defendants seek a total of $85,708.00 in fees, constituting  payment only for that portion of its legal bills that came as a direct result of Sweetland's violations of 28

26

U.S.C. § 1927. $71,877.00 in fees are associated with the summary judgment motions; $13,831.00 in fees are associated with the recusal motion. The Court will determine the amount that would be awarded without regard to consideration of Sweetland's financial circumstances.

Four attorneys and one paralegal billed time in connection with the motions and Defendants seek reimbursement at the rates prescribed in Appendix B of the Local Rules of the Court. Specifically: (1) Ava Lias-Booker ("Lias-Booker"), admitted sixteen years as of 2002, billing at $275/hour; (2) David E. Ralph ("Ralph"), admitted eight years as of 2002, billing at $220/hour; (3) Jennifer B. Speargas ("Speargas"), admitted three years as of 2002, billing at $170/hour; (4) John Ki ("Ki"), admitted three years as of 2002, billing at $170/hour; (5) Gina M. Trasatti ("Trasatti"), a paralegal with twenty years of experience in 2002, billing at $90/hour. The Court notes that Lias-Booker, Speargas and Trasatti discounted their hourly billing rate for the purpose of this reimbursement[6] and finds that the fees sought are reasonable in light of the context of the litigation, i.e., a

---

[6]    Lias-Booker discounted her customary billing rate from $345/hour to $275/hour. Speargas discounted her customary billing rate from $175/hour to $170/hour. Trasatti discounted her customary billing rate from $120/hour to $90/hour.

multi-million dollar lawsuit brought by multiple plaintiffs against a major banking corporation and its subsidiary.

To determine the reasonableness of the fees sought, the Court is guided by the traditional twelve factors specified in Johnson v. Georgia Highway Express Inc.[7] Of these factors, three emerge as particularly important in light of Defendants' decision to seek reimbursement according to the customary fees in the Local Rules. Specifically, the time and labor expended, the novelty and difficulty of the questions raised and the skill required to properly perform the legal services rendered.

Defendants have provided the Court with a five and three-quarter page chart itemizing the billings. The Court has reviewed the chart line by line to assess whether the amount of time spent appeared commensurate to the task described. Generally, the Court found that the time spent on the task was appropriate. However, several entries were so vague that it was impossible to understood what transpired during the work period and whether the amount of time spent was reasonable in relation to the task. For example, an entry on 5/30/2002 billed 6.5 hours for Speargas to "review case law and update outline per ALB's instructions"; an entry on 6/3/2002 billed

---

[7]    See footnote 4, supra.

28

11.5 hours for Speargas to "review and revise summary judgment
outline"; an entry on 6/6/2002 billed 11.5 hours for Speargas
to "research/draft memorandum for summary judgment"; an entry
on 6/9/2002 billed 5.5 hours for Speargas to "research/draft
memorandum for summary judgment; an entry on 6/10/2002 billed
8 hours for Speargas to do the same thing.  On 9/1/202, Ralph
billed a total of 17.5 hours to "review, revise and finalize
motion and memorandum for summary judgment, draft
correspondence to clerk re: same and review and revise
appendix and authorities."  Other examples could be cited.
Taken together, the Court finds that they merit reducing the
amount of fees sought.

On the other hand, the second and third factor - the
novelty and difficulty of the questions raised and the skill
required to properly perform the legal services rendered -
mediate in favor of awarding the fees sought.  As discussed,
the recusal motion was based on a completely novel legal
theory that had never been addressed by any court.  The Court
recognizes that to defend against a novel legal argument
requires more research than called for by a question that has
already been addressed.  Likewise, while the legal issues
presented in the motions for summary judgment were not novel,
the obstacles imposed by Sweetland during the discovery

process no doubt made more difficult the task of arguing and opposing summary judgment. It is conceivable, therefore, that high level legal skills were required to address these two motions.

In light of the situation, the Court finds it reasonable to reduce the total amount of time billed by Speargas and Ralph - the two associates associated with the vague billing entries - by twenty-five percent. According to the Court's calculation, Speargas billed 169.5 hours on the motions for summary judgment and 15.1 hours on the recusal motion, which amounted to $31,382 in attorneys' fees. Reduced by twenty-five percent ($7,845.50), a total of $23,536.50 will be awarded for Speargas' time. According to the Court's calculation, Ralph billed 120.3 hours on the motions for summary judgment and 42 hours on the recusal motion, which amounted to $35,706 in attorneys' fees. Reduced by twenty-five percent ($8,926.50), a total of $26,779.50 will be awarded for Ralph's time.

Based on these reductions, the $85,708 sought by Defendants is reduced by $16,772. Accordingly, without consideration of Sweetland's financial circumstances, the Court would award Defendants a total of $68,936 in attorneys' fees to be paid by Sweetland.

At the hearing, Sweetland testified as to his limited ability to pay an award against him. The bottom line is that while Sweetland has several significant liabilities and no assets, he is gainfully employed as an attorney and is now earning approximately $6,000 per month after taxes. Given Sweetland's education and background there is every reason to conclude that he will continue to earn at least as much as his current income for the foreseeable future. In <u>Chosin Few, Inc. v. Scott</u>, 209 F.Supp.2d 593 (W.D.N.C. 2002) the Court, facing an analogous situation, did not reduce a total award in excess of $100,000 but permitted payment in installments (with interest). This Court concludes that Sweetland's actions, bad as they were, were not such as to warrant burdening him with over $68,000 plus interest in debt. On the other hand, the Court finds it necessary to impose a meaningful award that will be able to be paid and will deter Sweetland, and others who may consider acting as he did. The Court will not permit Sweetland to further ignore the obligation imposed by this Court.

Accordingly, the Court will issue an Order that will award Defendants the total amount of $50,000 with judgment interest but will provide that the Judgment shall be satisfied if Sweetland, starting in March of 2005, makes payments of

$500 per month for 60 months, a total of $30,000 without interest. If Sweetland, however, does not make such payments as Ordered, he shall be liable for the full amount of $50,000 plus judgment interest thereon and Defendants may effect collection of the full amount in due course.

IV.    <u>CONCLUSION</u>

For the foregoing reasons:

1.    Defendants Bank of America Corporation et al.'s Motion for Attorneys' Fees [Paper 217] is GRANTED IN PART AND DENIED IN PART.

2.    Counsel Rodney R. Sweetland, III, Esquire shall pay Defendants $50,000 plus judgment interest from the date of this Order.

a.    However, Defendants may not effect collection of this award if, commencing March 2005 and each month thereafter for 60 months, Sweetland pays Defendants $500.

b.    If Sweetland is late with a single monthly payment, Sweetland remains liable for the full amount of the award and Defendants may effect collection by all available legal means.

3.    Plaintiffs are not liable to Defendants.

4.    A Supplemental Judgment shall be issued by separate Order.

SO ORDERED, on <u>Thursday, February 17, 2005</u>.

_____/ s /_____
Marvin J. Garbis
United States District Judge

32